The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Betty Jane STEVENS, Defendant-Appellant.

No. 80CA0321.

Colorado Court of Appeals, Div. I.

Dec. 3, 1981.

Rehearing Denied Dec. 24, 1981.

Certiorari Denied March 15, 1982.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Gerash & Robinson, P. C., Scott H. Robinson, Denver, for defendant-appellant.

STERNBERG, Judge.

The defendant, Betty Jane Stevens, appeals a judgment entered on a verdict finding her guilty of second degree forgery. We reverse.

During August and September of 1978, six checks were forged on a bank account of an individual who had lost his checkbook. Each was made payable to and cashed at a Fort Collins grocery store. The first four were cashed without difficulty, but when they were returned to the store the account was placed on the store's bad check list. A fifth check was cashed on September 19, when the clerk neglected to compare it with the bad check list. On September 25, however, when a sixth check was tendered the clerk noted that the account was on the bad check list. The store manager attempted unsuccessfully to detain the person tendering the check. The manager did note the license number of an automobile in which the person left the store. The police searched motor vehicle records and determined that the car belonged to defendant's father, a resident of New Jersey, but nothing further was done at that time.

Approximately two months later the store manager and two employees were shown a photographic array from which each identified a picture of the defendant as the person who tendered the check. This prosecution followed.

Before trial defendant moved to suppress the in-court identification. The trial court rejected defendant's claim that the composition of the array was impermissibly suggestive and denied the motion. This denial leads to defendant's first contention of error on appeal.

■ Defendant argues, and we agree, that the photographic array was so inher-

ently suggestive as to be irreparably tainted and, therefore, the trial court erred in not suppressing both the photographic identifications and the later in-court identification. After viewing the six photographs in the array, we conclude that they unmistakenly were unduly suggestive. The person who perpetrated the offense had been described by the witnesses as being a light skinned black woman. In the photographic array only one was of a black person, and only that one was of a person having the facial characteristics generally associated with one of the Negro race. Where, as here, the perpetrator of the crime is known to be black, use of an array of six photographs, five of which do not depict individuals having facial characteristics and skin tones associated with the Negro race serves to channel the witnesses' attention to the only photograph of a black person in the array. Hence, as a matter of law, we hold that the out-of-court identification was unduly suggestive and thus improper. See *Huguley v. People*, 195 Colo. 259, 577 P.2d 746 (1978).

Accordingly, all evidence of this out-of-court identification should have been suppressed. Additionally, the trial court should have addressed the issue of whether there was an independent basis for the in-court identification before allowing the witnesses to identify the defendant at the trial. *Huguley v. People, supra.*

A second question of significance is raised. The defendant was originally represented *in this case* by an attorney who entered his appearance, filed motions, and appeared for her at the preliminary hearing. He withdrew as her attorney on January 31, 1979, and in July of that year became employed by the office of the district attorney whose staff prosecuted this case. Defendant moved for appointment of a special prosecutor on the first day of trial. The court heard the arguments of counsel and denied the motion.

■ As a preliminary matter, we note that the prosecutor did not object to the motion on the grounds that it was not time-

ly filed, and indeed, there is an indication in the record that there had been prior discussion concerning the fact that such a motion would be made two weeks prior to the commencement of trial. We conclude that the People waived their right to object to the timeliness of the motion. *See People v. Moore*, 193 Colo. 81, 562 P.2d 749 (1977); *cf. People v. District Court*, 189 Colo. 159, 538 P.2d 887 (1975).

■ We hold that the court erred in not granting the motion for appointment of a special prosecutor. The court had before it facts showing the attorney-client relationship in this very case between defendant and an attorney now a member of this prosecutor's staff.

Contrary to the arguments of the People, a defendant should not have to demonstrate prejudice or lack of integrity. The most compelling rationale for requiring appointment of a special prosecutor is avoidance of the appearance of impropriety. In this regard the circumstance of a defendant's former attorney joining the very staff which had the duty of prosecuting that defendant were commented on as follows in *People v. Shinkle*, 51 N.Y.2d 417, 434 N.Y.S.2d 918, 415 N.E.2d 909 (1980):

"[Such representation] inescapably gave both defendant and the public the unmistakeable appearance of impropriety and created the continuing opportunity for abuse of confidence entrusted to the attorney during the months of his active representation of defendant. It is no answer that defendant offers no evidentiary proof of actual prejudice. In the circumstances such proof would most likely be out of defendant's reach . . . ."

Any inconvenience to the People resulting from appointment of a special prosecutor, usually a deputy district attorney from another judicial district, *see* § 20–1–107, C.R.S.1973 (1978 Repl.Vol. 8), is but a small price to pay to avoid this appearance of impropriety. A defendant should not be forced to attempt to prove that there was an *actual* indiscretion or impropriety. Evidence of such conduct, being under the control of the prosecution, would be well-nigh impossible for a defendant to bring forth. *Shinkle, supra.*

■ We discern no merit to defendant's final contention of error, that the court erred in not giving a special jury instruction concerning the credibility of eyewitness identification testimony. A general credibility instruction was given; thus, there is no error. *See People v. Palumbo*, 192 Colo. 7, 555 P.2d 521 (1976).

The judgment is reversed and the cause is remanded to the district court for the purpose of appointment of a special prosecutor pursuant to § 20–1–107, C.R.S.1973 (1978 Repl.Vol. 8), and for a new trial.

KIRSHBAUM, J., concurs.

COYTE, J., dissents.

COYTE, Judge, dissenting.

I dissent.

The suggestiveness of a photographic identification, is not, by itself, necessarily conclusive on the question of due process at trial. *Bravo v. People*, 171 Colo. 418, 467 P.2d 814 (1970). As stated in *Neighbors v. People*, 171 Colo. 349, 467 P.2d 804 (1970):

"Suggestiveness of the line-up proceeding is not a sufficient circumstance by itself to lead us to declare that there has been a violation of the defendant's constitutional right to due process of law. That suggestiveness must, as we have said, so taint the in-court identification as to make it unreliable as a matter of law. . . . [E]very identification must be to some extent suggestive."

The central issue is whether the identification was so conducive to mistaken identification at trial that the defendant was denied due process of law. *Bravo v. People, supra.*

In excluding identification testimony solely because it finds it to be unduly suggestive, the majority neglects to apply the second prong of the applicable test, that of whether under the totality of the circumstances, despite some suggestiveness in the photographic array, the identification was

reliable. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). An identification should be suppressed only when it is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Factors to be considered in determining the likelihood of misidentification are: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the time of the identification; and (5) the length of time between the crime and the identification. *People v. Jones*, 191 Colo. 385, 553 P.2d 770 (1976).

Here, each witness had ample opportunity to observe defendant for at least five minutes. One store employee observed defendant while checking through her groceries. He testified that he was able to recall defendant's facial features because two hours later he was informed that her check was not good and that he would have to make it good. A second checker detected a tendered check on the store's bad check list and called the store manager. This witness testified that while waiting for the store manager she tried to get a good look at the defendant because it was part of her job in case she should later be required to identify her. The manager escorted defendant to his office where he attempted to detain her until the police arrived. As she left, he followed her to her car.

All three witnesses identified defendant from the photographic array within one minute. Two of the witnesses thought there were photos of more than two black persons. They testified at trial that they recognized defendant through an instant recollection of the past incident, and they did not indicate any doubts regarding their identifications.

After a suppression hearing, the trial court found that the photographs seemed for the most part to be of persons of similar skin color and facial features as defendant and that the police did not engage in any conduct during the photographic lineups which highlighted defendant's photograph. It then concluded that the identifications were reliable and thus found that the photographic lineups were not impermissibly suggestive. This determination of reliability is supported by the record, which includes the photographic array.

The majority, in reversing the factual determination of the trial court has, in addition to misconstruing the law, invaded the province of the jury. The issue of whether a photographic identification is impermissibly suggestive is a factual determination to be made by the trial court in the first instance. Once the trial court finds that it is not unduly suggestive, it is the province of the jury to determine the weight it is to be given. *See Edmisten v. People*, 176 Colo. 262, 490 P.2d 58 (1971).

Quoting with approval from *Neighbors v. People, supra*, the *Edmisten* court stated:

"In our opinion, suggestiveness, at least under some circumstances, may properly be left as a consideration for the jury in determining what weight to attach to the in-court identification of the defendant. We are concerned here not with a question of suggestiveness by itself, but with a question of what constitutes a denial of due process of law. The basic concern of this court is whether the procedure followed in conducting a line-up identification may have, under all the circumstances of the case, resulted in a misidentification of the defendant at trial. . . ."

"The jury heard testimony on how the line-up was conducted. It was fully within their province to consider the suggestiveness of the procedure when weighing the in-court identification of the defendant by the witnesses."

Here, the defendant did not object at trial to the in-court identification of her by the witnesses. She thus did not give the trial court any opportunity to make findings as to whether the witnesses had an independent source for their identification of the defendant. As the court stated in *Neighbors v. People, supra* :

"The jury heard testimony on how the line-up was conducted. It was fully within their province to consider the suggestiveness of the procedure when weighing the in-court identification of the defendant by the witnesses."

As a further indication that there was no misidentification, a reading of the record demonstrates that the car identified by the witnesses as being the one driven by the defendant, was registered to the defendant's father in New Jersey. Handwriting experts also positively identified the defendant's handwriting as being the same as the handwriting on the checks.

The majority, in finding a violation of the defendant's due process rights, not because it has found the identification to be unreliable as a matter of law, but merely because it finds the identification suggestive, has blatantly disregarded the appellate court's function. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). An appellate court may not invade the province of the jury by substituting a new factual resolution solely because it disagrees with the jury's factual determinations. *See Page v. Clark, supra.* The question of suggestiveness was within the province of the jury, and therefore, its findings should be binding upon us on appeal.

The majority next adopts a per se rule requiring that whenever an attorney who had represented a defendant on a criminal charge becomes employed by the district attorney who is prosecuting that charge, the entire staff of the district attorney must be recused and a special prosecution appointed. In adopting this per se rule, the majority ignores Formal Opinion 342, 62 A.B.A.L.J. 517 (1976) in which the ABA committee on professional ethics ruled that "vicarious disqualification of a government department is not necessary or wise...."

Furthermore, in *United States v. Caggiano*, 660 F.2d 184, (6th Cir. 1981) the Court of Appeals for the Sixth Circuit, in circumstances factually similar with those at issue here, refused to adopt such a per se rule. The *Caggiano* court stated:

"Even prior to the ABA opinion 342, it was recognized that disqualification of an entire government department because of a conflict of interest of a government attorney arising from his former employment would not be appropriate."

I would follow these rulings and not adopt a per se rule. Instead, I would hold that for a defendant's conviction to be reversed by virtue of his former attorney joining the prosecutor's office, defendant would have to show some prejudice to his case or some lack of integrity on the part of the prosecution. *People v. Shinkle*, 51 N.Y.2d 417, 434 N.Y.S.2d 918, 415 N.E.2d 909 (1980) (dissenting opinion).

Here, the defendant showed no such prejudice or lack of integrity. The prosecutor stated in his argument to the court that defendant's former attorney was assigned to Loveland, Colorado, an office with very little contact with the Fort Collins office. The prosecutor further stated that the attorney in question had not discussed the case with him and had not been present at any discussions of the case.

As to the fair trial issue, I presume that confidences were reposed in former counsel. However, there is no indication that these confidences have been violated. I do not here impute the knowledge of these confidences to all members of the district attorney's staff, especially where the prosecutor had no discussions of the case with the former attorney whose primary responsibilities were performed in an office in a different city. Thus, I would find that defendant has not met her burden of establishing facts from which the trial court might reasonably have concluded that she would not receive a fair trial. *See Osborn v. District Court*, Colo., 619 P.2d 41 (1980).

As to the appearance of impropriety question, there is no indication in the record that the former attorney occupied any supervisory position. *See Younger v. Superior Court*, 77 Cal.App.3d 892, 144 Cal.Rptr. 34 (1978); *People v. Shinkle, supra. Cf. People v. Latique*, 108 Ariz. 521, 502 P.2d 1340 (1972). He did attend staff meetings, but the record is silent regarding the pur-

poses of these meetings. The prosecutor, however, did state that the former attorney was not present during any discussions of this case. Thus, I would conclude that there is no appearance of impropriety here. *See Chadwick v. Superior Court,* 106 Cal. App.3d 108, 164 Cal.Rptr. 864 (1980); *People v. Shinkle, supra,* (dissent).

Therefore, since restrictions on the powers of the district attorney are to be construed as narrowly as possible, *see People ex rel. Losavio v. Gentry,* Colo., 606 P.2d 57 (1980), I would conclude that the trial court did not err in denying defendant's motion. *See United States v. Caggiano, supra; Roberts v. People,* 11 Colo. 213, 17 P. 637 (1888); *State v. Mata,* 88 N.M. 560, 543 P.2d 1188 (Ct.App.1975).