The PEOPLE of the State of Colorado, Petitioner–Appellant,

v.

The COUNTY COURT, CITY & COUNTY OF DENVER, and the Honorable Robert L. Patterson, one of the judges of the County Court, Respondents–Appellees,

and

Phillip Morris, Intervenor–Appellee.

No. 91CA1872.

Colorado Court of Appeals, Div. III.

Nov. 19, 1992.

Rehearing Denied Dec. 24, 1992.

Certiorari Denied June 14, 1993.

Norman S. Early, Jr., Dist. Atty., Everett B. Engstrom, Deputy Dist. Atty., Denver, for petitioner-appellant.

No appearance for respondents-appellees.

Daniel W. Edwards, Denver, for intervenor-appellee.

Opinion by Judge SMITH.

The People appeal the district court's judgment denying their petition under C.R.C.P. 106(a)(4) for a writ of prohibition against the county court. We affirm.

The relevant facts are not in dispute. A Denver deputy district attorney (Denver Deputy), while in the county courthouse on unrelated matters, recognized the intervenor, Phillip Morris, as the defendant in a pending county court criminal case. The Denver Deputy had a police officer check for outstanding warrants on Morris and, finding that there were three active warrants, communicated this information to the county court judge in whose courtroom intervenor was then appearing. The judge told the Denver Deputy he preferred not to take action on the warrants until Morris' current proceedings had been concluded.

As the Denver Deputy left the courthouse, he and Morris engaged in a verbal exchange which ultimately resulted in the Denver Deputy and a Denver police officer physically subduing and arresting Morris.

Thereafter, the Denver Deputy, as complaining witness, filed a complaint charging Morris with multiple municipal code violations. In response, Morris moved to recuse the office of the Denver District Attorney in the original pending criminal case and requested the appointment of a special prosecutor.

Following a hearing, the county court issued the ruling at issue here, appointing a special prosecutor in the pending county court criminal case and, simultaneously, disqualifying the entire office of the Denver district attorney from further involvement in that case. The People sought relief in the nature of prohibition from this ruling under C.R.C.P. 106(a)(4). Without discussion, the People's request for relief was denied.

The sole issue on appeal is whether the district court erred in denying the C.R.C.P. 106 petition. We conclude that it did not. Its review was limited, as is ours, to the question of whether the county court abused its discretion in issuing its order.

After listening to the Denver Deputy's testimony and arguments of counsel, the county court noted that the issues raised by the facts, if viewed only in terms of the relationship between an individual prosecutor and an individual defendant, might not seem so substantial. However, citing the responsibilities placed on the courts to preserve the "integrity of the court's actions" and the administration of justice, the trial court rejected this focus.

Adopting a broader view of the facts which reflected the foregoing responsibilities, the trial court then concluded:

> To continue to allow the participation of the Denver District Attorney's Office— *in light of the factual predicate laid by the evidence* ... would, in this court's opinion, create a risk of—not only failed confidence in the public system ... but also [create] an open invitation that the conduct of a prosecuting attorney is not subject to scrutiny ... [T]he public's perception of continued prosecution, in this case, would be a patent impropriety and a failed responsibility—on the court—to

insure a justness of the criminal process in Denver county. (emphasis added)

On appeal, the People do not contest the legal basis upon which the court based its decision. The "appearance of impropriety" is not only a proper ground for disqualification, *see People v. Garcia,* 698 P.2d 801 (Colo.1985), it is also a compelling basis for such action. *People v. Stevens,* 642 P.2d 39 (Colo.App.1981). Nor do the People contest that the principle of "imputed disqualification" applies to and may disqualify an entire district attorney staff. *People v. Garcia, supra.* The People, likewise, conceded at the county court hearing, as they have before us in oral argument, that the decision on the appearance of impropriety issue rests solely in the trial court's sound discretion.

The crux of the People's argument is, rather, that since the Denver Deputy was neither the prosecuting attorney nor a witness in the criminal action pending against Morris and since the subsequent municipal violations in which the Denver Deputy was a participant involved matters outside the jurisdiction of the district attorney's office, there was no basis for the county court to conclude that an "appearance of impropriety" existed. We disagree.

Disqualification because of the *appearance* of impropriety differs from disqualification based on *actual* impropriety.

Numerous cases have found actual impropriety when, for example, a district attorney is a witness against the defendant and his testimony is of sufficient consequence to prevent a fair trial. *See Pease v. District Court,* 708 P.2d 800 (Colo.1985). A similar conclusion could be reached if the prosecuting attorney has a prior attorney-client relationship with the defendant. *See generally Rodriguez v. District Court,* 719 P.2d 699 (Colo.1986).

Disqualification based on the *appearance* of impropriety, unlike the situations above, however, may not involve an actual impropriety such as violation of a disciplinary rule or other conduct which may bring into question the actual fairness of a trial. *See generally Cleary v. District Court,* 704 P.2d 866 (Colo.1985). Rather, it is a legal basis for disqualification which, while it may exist in the situations above, is not limited to such circumstances. *See People v. Stevens, supra; Osborn v. District Court,* 619 P.2d 41 (Colo.1980).

Indeed, the policy considerations involved in making the discretionary decision whether disqualification should result from an "appearance of impropriety" are, as the county court noted, much broader, involving issues of "public confidence in the integrity and efficiency of the legal system" and issues of impartiality and assurance that matters will be decided "solely on the merits." *See* Code of Professional Responsibility, EC 9–4 & 9–7.

Accordingly, we conclude, as the trial court implicitly concluded, that the lack of an actual impropriety as demonstrated by the People is not necessarily dispositive in ruling on whether a district attorney or, as here, the entire office of the district attorney, should be disqualified because of the existence of an "appearance of impropriety." Rather, because the existence of an "appearance of impropriety" is almost entirely dependent on context, we conclude that determinations grounded on this legal basis must, of necessity, turn on the circumstances of each particular case. *See Cleary v. District Court, supra.* Thus, the question of whether an appearance of impropriety exists and the remedy therefor are uniquely questions for the court and must be committed to the trial court's broad discretion. We find no abuse of that discretion here.

Under this standard, it is irrelevant that the continuing representation of the People by the Denver Deputy or his associates in the District Attorney's Office would not violate any disciplinary rule or actually diminish the possibility of a fair trial for Morris. It is likewise irrelevant that another court may not have taken the same action against the district attorney's office as the county court here. The only pertinent inquiry is, instead, whether the facts reasonably support the county court's con-

clusion that the *public* would perceive continued prosecution by the district attorney's office, under the particular circumstances here, as improper and unjust, so as to undermine the credibility of the criminal process in our courts.

We hold that the facts are sufficient to support such a conclusion. It was undisputed that the Denver Deputy, on his own volition and without any apparent necessity, had a warrant check run on Morris. And, when instructed not to have Morris arrested, he initiated and became involved in physically subduing Morris and in effecting just such an arrest. Still, his "involvement" with Morris did not cease, but rather, then rose to another, even more public, level, that of becoming the complaining witness against Morris in a new complaint filed against him for violations of city ordinances arising out of the altercation.

We conclude that it was neither manifestly arbitrary, unreasonable, nor unfair for the county court, in the exercise of its discretion, to hold that these facts created a *public perception* that Morris was likely to be unfairly prosecuted by the district attorney's office because a member of that office had, in effect, "borne the brunt" of Morris' conduct. It is true that the two complaints are unrelated and will be pursued by different prosecutorial offices. Nonetheless, the *public perception* of impropriety, which was the focus of the county court's concern, finds reasonable support in the record. This is particularly true in the Denver courts in which the same judges, sitting in the same courtrooms, may hear both municipal violations and state statutory violations.

■ In addition to their abuse of discretion argument, the People also argue that the General Assembly, in § 20–1–107, C.R.S. (1986 Repl.Vol. 8B), has authorized the court to appoint a special prosecutor only in qualified circumstances, such as when the district attorney is shown to have an "interest" in the proceedings. We like-

wise conclude that this argument is without merit.

An essential element of the "appearance of impropriety" found here was the "interest" the district attorney's office held, through the Denver Deputy, as a complaining witness, in another proceeding against this defendant and the conflicts this "interest" created in that office's ability to proceed fairly and impartially in the pending criminal prosecution of Morris. Implicitly, the county court found these conflicting "interests" serious and substantial by its express ruling that continued prosecution by the district attorney's office would constitute, in the public's perception, not only a "patent impropriety" but also a "failed responsibility" to insure a justness of the criminal process.

Certainly, the foregoing satisfies the standard set forth in *Gray v. District Court*, 42 Colo. 298, 94 P. 287 (1908) that the nature of the "interest" which requires the removal of a district attorney under § 20–1–107 must involve a concern in the *outcome*, not just partiality or bias in favor of or against a defendant.

We acknowledge that, at first glance, the ruling may appear in excess of caution. *See Cleary v. District Court, supra.* Nonetheless, review of the undisputed facts, reasonable inferences drawn therefrom, and the broader contextual considerations surrounding matters of public perception, convince us that there is support for the county court's ruling and that it was not an abuse of judicial discretion. Under these circumstances, there is no basis to justify interference by the appellate court.

The judgment is affirmed.

CRISWELL and HODGES,* JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).