The PEOPLE of the State of Colorado ex rel. G.F. SANDSTROM, District Attorney, Tenth Judicial District, State of Colorado, Petitioner,

v.

The DISTRICT COURT In and For the COUNTY OF PUEBLO, State of Colorado, and the Honorable John R. Tracey, one of the Judges Thereof, Respondents.

No. 94SA235.

Supreme Court of Colorado,
En Banc.

Nov. 15, 1994.

Rehearing Denied Dec. 5, 1994.

G.F. Sandstrom, Dist. Atty., Tenth Judicial Dist., Karrick A. Burrows, Deputy Dist. Atty., Pueblo, for petitioner.

David F. Vela, Colorado State Public Defender, Douglas K. Wilson, Elizabeth A. Martinez, Deputy State Public Defenders, Pueblo, for defendant Paul Vince Maurello and on behalf of respondents.

Raymond T. Slaughter, Executive Director, Katherine M. Clark, Staff Atty., Colorado Dist. Attys. Council, Denver, Gale A. Norton, Colorado Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timo-

thy M. Tymkovich, Sol. Gen., John D. Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., for amici curiae Colorado Dist. Attys. Council and Colorado Atty. General's Office.

Justice VOLLACK delivered the Opinion of the Court.

In this original proceeding pursuant to C.A.R. 21,[1] we issued a rule directing the respondent district court (the district court) to show cause why it should not be prohibited from removing the petitioner, the District Attorney for the Tenth Judicial District, State of Colorado (the district attorney[2]), from prosecution of a criminal case against Paul Vince Maurello (Maurello) on the ground that the district attorney had an interest in the outcome of the case since the district attorney was simultaneously prosecuting a civil forfeiture case. We now make the rule absolute.

## I.

On November 12, 1993, Maurello was charged by information with possession of marijuana with intent to distribute, in violation of section 18–18–406(8)(b), 8B C.R.S. (1994 Supp.), and possession of eight ounces or more of marijuana, in violation of section 18–18–406(4)(b), 8B C.R.S. (1994 Supp.).[3] During its investigation of Maurello, the Pueblo Police Department (police department) searched Maurello's home and seized $4,912.00 in currency. Shortly thereafter, the police department sent a forfeiture request to the district attorney, asking the district attorney to initiate seizure and forfeiture proceedings against the $4,912.00. On December 14, 1993, the district attorney filed a civil forfeiture action against the $4,912.00 pursuant to the Abatement of Public Nuisance Act, § 16–13–301 to –316, 8A C.R.S. (1986 & 1994 Supp.).[4] The complaint alleged that Maurello used the $4,912.00 to "conduct, maintain, aid, abet or facilitate" a public nuisance act through his possession of marijuana with intent to distribute and his possession of more than eight ounces of marijuana. The complaint designated the police department and the district attorney as the seizing agencies, and requested the court to forfeit the currency to those agencies "for their lawful activities." The currency was subsequently turned over to the district attorney, and placed in an interest-bearing account, according to agency procedure.[5]

After a preliminary hearing, the district court found that there was probable cause for the charges against Maurello, and ordered the case set for trial. On March 21,

1. This court has original jurisdiction to issue a writ of mandamus or prohibition where the district court is proceeding without or in excess of its jurisdiction, or where the district court has abused its discretion and where an appellate remedy would be inadequate. *Halaby, McCrea & Cross v. Hoffman,* 831 P.2d 902, 905 (Colo.1992).

2. In the Petition for Writ in the Nature of Prohibition, the petitioner is identified as "The People of the State of Colorado ex rel. G.F. Sandstrom, District Attorney, Tenth Judicial District, State of Colorado." In this opinion, we refer to the petitioner as "the district attorney," and use the term to refer interchangeably to either the person of the District Attorney for the Tenth Judicial District or the Office of the District Attorney for the Tenth Judicial District.

3. The information charged a codefendant, Cherie Felice Maurello, with the same crimes. The charges against Cherie Felice Maurello were later dismissed.

4. Under the Abatement of Public Nuisance Act, the district attorney has a duty to bring an action

"to restrain, prevent, abate, and perpetually enjoin any ... public nuisance and to seek the forfeiture of property." § 16–13–302, 8A C.R.S. (1994 Supp.). The statute provides that a class 1 public nuisance includes "[a]ll currency ... furnished or intended to be furnished by any person in exchange for any public nuisance act," § 16–13–303(3)(a), 8A C.R.S. (1994 Supp.), "[a]ll proceeds traceable to any public nuisance act," § 16–13–303(3)(b), 8A C.R.S. (1994 Supp.), and "[a]ll currency ... used or intended to be used to facilitate any public nuisance act," § 16–13–303(3)(c), 8A C.R.S. (1994 Supp.). A "public nuisance act" is defined by § 16–13–301(2.3), 8A C.R.S. (1994 Supp.), and includes the "unlawful ... distribution of any controlled substance," and the "unlawful possession of any controlled substance." § 16–13–303(1)(c)(I)–(II), 8A C.R.S. (1994 Supp.).

5. The district attorney issued a receipt for the currency. The receipt indicates that the district attorney received $4,893.00 from the police department. At the motion hearing, Detective Lewis C. Andrew testified that the department retained $19.00 of the total $4,912.00 seized, because the $19.00 was in foreign currency.

1994, Maurello filed a motion to dismiss the information and, in the alternative, to appoint a special prosecutor. Maurello argued that the district attorney had a financial interest in the outcome of the criminal case because the district attorney was designated as one of the agencies entitled to receive a portion of the forfeited currency if the forfeiture case was successful. Maurello also argued that the involvement of the district attorney in both the criminal and civil cases created an appearance of impropriety under the ethical rules.

The trial court held a hearing on the motion on May 6, 1994. Several witnesses testified at the hearing, including Detective Lewis C. Andrew, Deputy District Attorney Patrick Avalos, and District Attorney Gus F. Sandstrom.[6] Detective Andrew, an officer with the Narcotics Unit of the police department, testified that he arrested Maurello and was present when the currency was seized from Maurello's home. Detective Andrew said that, based on his involvement in plea negotiations involving defendants with pending criminal and civil forfeiture cases, he was under the impression "that the two are not to be combined." He also testified that there is no separate civil forfeiture unit, and that District Attorney Sandstrom typically handles forfeiture cases.

District Attorney Sandstrom confirmed that he personally handles the forfeiture cases, including the forfeiture involved in this case. He said that, when his office prevails on a civil forfeiture case under the Abatement of Public Nuisance Act, the forfeited currency is divided between the district attorney and the police department. He explained that the two agencies have an agreement whereby the district attorney generally receives one-third of the seized currency, and the police department receives two-thirds. District Attorney Sandstrom testified that there is a separate fund for forfeited currency, and that the fund is controlled by a Board

of Directors, of which he is a member. He explained that the funds are used "for the use and benefit of prosecution," including buying books and computer supplies, paying for audits, and providing funds for drug purchases by undercover officers.

District Attorney Sandstrom further testified that it is office policy to keep civil forfeiture cases and criminal cases completely separate. To that end, he said that the police are required to make forfeiture requests independently from the requests on criminal cases, and that each case must receive a copy of all discovery documents. District Attorney Sandstrom testified that criminal plea negotiations are also handled separately from forfeiture plea negotiations, except in rare cases when joint negotiations are initiated by a defense attorney. He said that his office does not stand to benefit, nor suffer disadvantage, from the outcome of a criminal case. Finally, District Attorney Sandstrom explained that forfeiture cases are stayed pending the resolution of the criminal case. He acknowledged that a conviction in the criminal case could be important in proving the subsequent forfeiture case, with its civil burden of proof by a preponderance of the evidence.

Deputy District Attorney Patrick Avalos (Avalos) told the court that he is a supervising attorney, and that he was recently elected to a seat on the Pueblo City Council. Avalos further testified that, as one of seven city council members, he must vote to approve or disapprove a budget for the City of Pueblo. Avalos said that he does not have the power to hire or fire anyone at the police department. He explained that the city manager is responsible for hiring and firing department heads such as the Chief of Police, and that the city manager, in turn, is retained by the city council. Lastly, he testified that he had never used his position as a city council member to influence a criminal

6. Detective Andrew was called to testify regarding his involvement with the investigation of Maurello. Although Deputy District Attorney Avalos was not involved with the prosecution of either the criminal or forfeiture case, Maurello apparently argued at the motion hearing that Avalos' employment by the district attorney and

his membership on the Pueblo City Council created an appearance of impropriety. Avalos therefore testified regarding his dual roles. District Attorney Sandstrom was called to testify in his supervisory capacity, and because he is handling the forfeiture case.

case, and that he was not involved in the present case.

At the conclusion of the hearing, the district judge took the motion under advisement. On May 12, 1994, the district court issued its order. The court first found that Avalos' dual roles as Deputy District Attorney and Pueblo City Council member did not create an appearance of impropriety. The court found that Avalos may have more influence over the police department than other deputy district attorneys. However, the court held that the integrity of the criminal justice system was not compromised, because the public's perception would reasonably be that the district attorney and the police department "are in the same camp anyway."

The district court nevertheless appointed a special prosecutor to handle the criminal case against Maurello because the court found that the district attorney was "interested" in the criminal case, under section 20–1–107, 8B C.R.S. (1986).[7] The court reasoned that a conviction in the criminal case, although not dispositive, would support the district attorney's allegation in the forfeiture case that the currency was used to " 'conduct, maintain, aid, abet or facilitate a Class One Public Nuisance [possession of marihuana, and possession of marihuana with intent to distribute].' " The court concluded that since the district attorney would receive some of the forfeited funds if the forfeiture case was successful, the district attorney was "interested" in the outcome of the criminal case. The court therefore appointed a special prosecutor.

The People then filed this original proceeding, arguing that the district court erred in appointing a special prosecutor.

## II.

The People argue that the district court abused its discretion when it found, pursuant to section 20–1–107, 8B C.R.S. (1986), that the district attorney was "interested" in the criminal case against Maurello. We agree. We find that the district attorney's involvement in the criminal case as it relates to the pending forfeiture case is too attenuated to create a conflict of interest.

Under section 20–1–107, the district court has discretion to disqualify the district attorney from a case and appoint a special prosecutor if the district attorney is "interested" in the outcome of the case. Section 20–1–107 provides, in relevant part, as follows:

> If the district attorney is interested or has been employed as counsel in any case which it is his duty to prosecute or defend, the court having criminal jurisdiction may appoint a special prosecutor to prosecute or defend the cause.

Although the statute does not define the word "interested," we have held that the district attorney's disqualification is proper when the district attorney has some involvement in the defendant's case which would impair that office's ability to prosecute the case fairly. *See Wheeler v. District Court,* 180 Colo. 275, 278–79, 504 P.2d 1094, 1096 (1973).

In those cases where disqualification is justified, a member of the district attorney's office generally has a direct interest in the case which is likely to create an appearance of impropriety.[8] In *Pease v. District Court,* 708 P.2d 800, 802 (Colo.1985), we held that the district attorney should be disqualified from prosecuting a case in which two attorneys in that office were material witnesses in the case.

Similarly, in *People v. Stevens,* 642 P.2d 39 (Colo.App.1981), the prosecuting attorney had an attorney-client relationship with the defendant prior to the attorney's employment as a prosecutor. The court held that the district court should have appointed a special

---

7. Under § 20–1–107, 8B C.R.S. (1986), the district court may disqualify the district attorney and appoint a special prosecutor if the district attorney is "interested . . . in any case which it is his duty to prosecute."

8. The district court may also disqualify the district attorney if the district attorney's partic-

ipation in the case creates an appearance of impropriety, i.e., by undermining the public trust in the criminal justice system, or creating an appearance that the defendant will not be fairly tried. *See People v. Garcia,* 698 P.2d 801, 806 (Colo.1985); *People v. County Court,* 854 P.2d 1341, 1344 (Colo.App.1992).

prosecutor to avoid the appearance of impropriety. *Id.* at 41. *See also People v. County Court,* 854 P.2d 1341 (Colo.App.1992) (holding that the court properly appointed a special prosecutor where the deputy district attorney pursued a warrant check on the defendant, personally effected the defendant's arrest by subduing him, and later planned to appear as a witness in the case arising from the altercation).

■ Section 20–1–107 does not require the district court to disqualify the district attorney simply because the district attorney has some interest in the case. In *People v. District Court,* 189 Colo. 159, 162, 538 P.2d 887, 889 (1975), we held that section 20–1–107 was designed to permit the appointment of a special prosecutor "only when the district attorney has an interest in the litigation *apart from his professional responsibility of upholding the law.*" (Emphasis added.) In that case, the defendant sought to disqualify the district attorney from prosecuting the case against him. The district attorney, who was also a candidate for mayor, bought a newspaper campaign advertisement. In the advertisement, the district attorney quoted a newspaper editorial which said that the district attorney was successful in most cases, giving as an example " '[the defendant's] shaky financial deals.' " *Id.* at 161, 538 P.2d at 888. We held that the only possible inference from the editorial was that the district attorney was "properly performing his responsibilities and duties as district attorney in the [defendant's] case," and that the editorial was not evidence that the defendant would be subjected to an unfair trial. *Id.* at 162–63, 538 P.2d at 889.

■ In this case, the district attorney is not interested in the outcome of the criminal case against Maurello apart from an interest in fulfilling its duties. In fact, the district attorney is obligated by law to "faithfully discharge the duties of [the district attorney's] office," which duties include representing the People in enforcing the laws of the state. *See* §§ 20–1–101 and 20–1–102(3), 8B C.R.S. (1986 & 1994 Supp.). By pursuing both the criminal case against Maurello, and

the forfeiture case against the seized currency, the district attorney was merely discharging the obligations of that office.

In *Gray v. District Court,* 42 Colo. 298, 304, 94 P. 287, 289 (1908), we said that "[t]he interest which requires the removal of a district attorney for the particular occasion ... is such a concern in the outcome of the matter that he will either reap some benefit or suffer some disadvantage." The district attorney has no improper involvement in either case, and the members of that office will not personally receive benefit or detriment from the outcome of either case. Rather, the district attorney is fulfilling its duties by pursuing both statutory remedies, as it is authorized to do. *See* § 20–1–102, 8B C.R.S. (1986 & 1994 Supp.) ("The district attorney, when enforcing support laws pursuant to statute, contract, or request of the court, may use any remedy, either civil or criminal, available under the laws of this state.").

While a conviction in the criminal case would be beneficial to the district attorney in proving its forfeiture case under the Abatement of Public Nuisance Act, the forfeiture is not dependent on a conviction in the criminal case. The forfeiture case and the criminal case are independent causes of action, requiring separate trials and proof of separate elements. Although the district attorney bears the burden to prove the criminal case beyond a reasonable doubt, the district attorney must only prove the forfeiture case, which is civil in nature, by a preponderance of the evidence. *People v. Milton,* 732 P.2d 1199, 1207 (Colo.1987). The function of the forfeiture action is also separate from the punitive function of a criminal conviction. *See People v. Garner,* 732 P.2d 1194, 1196 (Colo.1987) (holding that, in a forfeiture case, the property itself is the offender "and may thereby be subject to forfeiture even though the owners of the property might well be innocent of any wrongdoing"). Therefore, while there is some overlap in the elements to be proved under the two cases, the district attorney only stands to benefit from a criminal conviction to the extent that the office's duty to prosecute crimes is fulfilled, and its duty to abate public nuisances is furthered.[9]

---

**9.** We reject the suggestion that the district attorney is "interested" in the outcome of the crimi-

712

For substantially the same reasons, we reject Maurello's argument that the district attorney's simultaneous involvement in the criminal case and the forfeiture case creates an appearance of impropriety which requires the disqualification of the district attorney. The district attorney's involvement in both the criminal and civil forfeiture cases, under the facts of this case, does not undermine public confidence in the impartiality of the criminal justice system.

In sum, we conclude that the district court abused its discretion in disqualifying the district attorney and appointing a special prosecutor to handle the criminal case against Maurello. We hold that the district attorney may proceed with both the criminal and forfeiture cases, and that the district attorney is not "interested" in the outcome of the criminal case merely because it is seeking to forfeit the seized currency. The rule is made absolute, and the case is remanded for further proceedings consistent with this opinion.

nal case because it chooses to seek forfeiture of the currency under the Abatement of Public Nuisance Act, rather than under the Colorado Contraband Forfeiture Act, §§ 16–13–501 to –508, 8A C.R.S. (1986 & 1994 Supp.). The district attorney's decision to proceed under one statute and not another is a matter within its sound prosecutorial discretion. *See Myers v. District Court*, 184 Colo. 81, 85, 518 P.2d 836, 838 (1974).