The PEOPLE of the State
of Colorado, Plaintiff,

v.

Cruz PALOMO, Defendant.

No. 01SA68.

Supreme Court of Colorado,
En Banc.

Sept. 10, 2001.

Ken Salazar, Attorney General, Paul Koehler, Assistant Attorney General, Criminal Justice Section, Appellate Division, Denver, CO, Mark Adams, District Attorney, Thirteenth Judicial District, Fort Morgan, CO, Attorneys for Plaintiff.

David S. Kaplan, Colorado State Public Defender, Kathleen A. Lord, Chief Appellate Deputy, Katherine Brien, Deputy State Public Defender, Denver, CO, Attorneys for Defendant.

Justice KOURLIS delivered the Opinion of the Court.

In this original proceeding pursuant to C.A.R. 21, we determine whether the district court properly exercised its discretion by granting the defendant's motion to recuse the Thirteenth Judicial District Attorney's Office (district attorney) and the Capital Crimes Unit of the Colorado Attorney General's Office (Capital Crimes Unit) from further participation in this case after finding an appearance of impropriety. We issued a rule directing the respondent, Cruz Palomo, to show cause why the district attorney and Capital Crimes Unit, should not be permitted to prosecute a criminal case against Palomo. We now make that rule absolute and conclude that the trial court had insufficient grounds for disqualification of the district attorney and the Capital Crimes Unit.

Specifically, we disagree that the files of Palomo contained medical records as described in the statute prohibiting the theft of medical records, and therefore infer no potentially criminal wrongdoing either of the personnel director or the district attorney's office as to those files. An employer's personnel records of employee drug tests and physical ability tests that are required as conditions of employment are not medical records for purposes of the theft statute. Further, the defendant has no standing to raise any privilege with respect to the personnel files of the victim, Flora Padilla. However, should the trial court sua sponte find impropriety by the personnel director or the district attorney's investigator in releasing those records, the court should consider appointment of a special prosecutor to pursue the theft charge and to determine the appropriateness of an offer of immunity to the personnel director and should also consider exclusion or limitation of the evidence at trial.

I.

This case arises out of the prosecution of Cruz Palomo (Palomo) for the murder of

Flora Padilla (Padilla). Palomo and Padilla had worked together at the Excel Corporation meat packing plant in Fort Morgan, Colorado. Excel eventually fired Palomo. On the day of the murder, investigators from the district attorney's office and the Capital Crimes Unit spoke with Excel's assistant personnel manager to determine if he knew anything about, or had any records concerning, interactions between Palomo and Padilla.

During the conversation, the investigators asked for copies of Palomo's and Padilla's personnel files. The investigators told the personnel manager that if necessary, they could seek a subpoena or a search warrant for the files. The investigators testified at the hearing on the defense motion to disqualify the district attorney's office that they told the personnel manager that they did not want any medical or psychological files concerning Palomo or Padilla.

After conferring with Excel's corporate counsel, the personnel manager informed the investigators that Excel needed a written request for the records from the district attorney's office. The investigators provided a written request and the personnel manager released Palomo's and Padilla's personnel files.[1] The investigators then had the files copied for discovery purposes, and provided copies to defense counsel.

Contrary to the investigators' professed directions to delete any documents that might relate to medical or psychological issues, both files did contain the results of employment-required drug screening and physical ability tests. Padilla's personnel file also contained routine medical test results associated with work-related injuries and with a workers' compensation disability claim.

Once the district attorney filed first degree murder charges against Palomo, Palomo's defense counsel filed a motion to recuse the district attorney's office and the Capital Crimes Unit from further participation in the case. Palomo argued that by asking for and receiving the personnel files, the investigators, along with the Excel personnel manager, committed the offense of theft of medical

records, in violation of section 18–4–412, 6 C.R.S. (2000).

Upon learning that he faced possible criminal charges, Excel's personnel manager, through counsel, indicated that if called to testify, he would invoke his right to remain silent. The district attorney offered immunity from prosecution for theft of medical records to the personnel manager, but retracted the offer the next day. The defense argued that the offer and withdrawal of immunity proved that the district attorney had an actual conflict in the case because the personnel director's testimony could implicate the district attorney's office in misconduct.

The district court found that the employment-required drug tests, the physical ability tests of both employees and the results of Padilla's personal medical tests constituted medical records under section 18–4–412. The district court further found that Palomo failed to show the commission of an actual impropriety by the district attorney's office and the Capital Crimes Unit. Nonetheless, the court found:

> at least a prima facie showing by the defense that defendant's and others' rights very well may have been violated and as a result, there's not only just civil issues that are involved, but also issues of a criminal nature which, at this point, would affect and may effect witnesses that may be called to testify.

The court further held that there was arguably a claim that the investigators needed a search warrant to obtain Palomo's and Padilla's personnel records. Thus, the district court concluded that a colorable claim could be made that, by providing the files to the investigators without a warrant, the personnel manager committed the offense of theft of medical records.

The district court then characterized the proceedings as "tainted" and the prosecution as "compromised." It disqualified the district attorney's office and the Capital Crimes Unit and ordered appointment of a special prosecutor for the case.

---

1. The written request stated: "Please provide to the Office of the District [sic] Attorney any and all records of Cruz Palomo and Flora Padilla."

## II.

In general, Colorado requires that its district attorneys and attorney general prosecute criminal cases. Colo. Const. art. IV, § 1(1); *id.*, art. VI, § 13; § 20–1–102(1)(a), 6 C.R.S. (2000). However, section 20–1–107, 6 C.R.S. (2000), provides that a judge may disqualify the district attorney from a case and appoint a special prosecutor if the district attorney "is interested or has been employed as counsel in any case which it is his duty to prosecute or defend." Although the statute does not define "interested," we have held that a court may properly disqualify a district attorney who has some involvement in the defendant's case that would "impair that office's ability to prosecute the case fairly." *People ex rel. Sandstrom v. Dist. Court*, 884 P.2d 707, 710 (Colo.1994). Specifically, we have focused on whether the members of the district attorney's office would stand to receive personal benefit or detriment from the outcome of a case in order to determine whether the office was "interested" in the case in such a way as to require disqualification. Id. at 711. Examples of such a level of "interest" would be a case in which attorneys in the office were material witnesses in a case, *Pease v. Dist. Court*, 708 P.2d 800, 802 (Colo.1985), or a case in which an attorney in the office had an attorney-client relationship with the defendant prior to the attorney's employment as a prosecutor. *People v. Stevens*, 642 P.2d 39, 40 (Colo.App. 1981).

An "appearance of impropriety" can also be the basis for disqualification. *People v. Garcia*, 698 P.2d 801, 806 (Colo. 1985) (holding that a trial court may disqualify the district attorney where a member of his staff's testimony in a criminal case created an appearance of impropriety); *People v. County Court*, 854 P.2d 1341, 1344 (Colo.App. 1992) (holding that an appearance of impropriety existed where the deputy district attorney had an altercation with the defendant at the time of the defendant's arrest). An appearance of impropriety is "an interest in the litigation apart from [the district attorney's] professional responsibility of upholding the law." *Sandstrom*, 884 P.2d at 711 (quoting *People v. Dist. Court*, 189 Colo. 159, 162, 538 P.2d 887, 889 (Colo.1975)). In determining whether there is a legitimate appearance of impropriety, courts should not accept the most cynical view. *McFarlan v. Dist. Court*, 718 P.2d 247, 249 (Colo.1986).

The fundamental inquiry is "whether disqualification appears reasonably necessary to insure [sic] the integrity of the fact-finding process, the fairness or appearance of fairness of trial, the orderly or efficient administration of justice, or public trust or confidence in the criminal justice system." *Garcia*, 698 P.2d at 806 (internal quotation marks omitted). The court should strive to "shape a remedy which will assure fairness to the parties and the integrity of the judicial process." *Id.*

Trial courts have broad discretion in determining whether they should disqualify a district attorney from prosecuting a particular case. *McFarlan*, 718 P.2d at 249. A court commits an abuse of discretion if it makes a manifestly arbitrary, unreasonable or unfair decision. *County Court*, 854 P.2d at 1345. In reviewing the trial court's decision, the pertinent inquiry is whether the facts support the court's conclusion that the "public would perceive continued prosecution by the district attorney's office, under the particular circumstances here, as improper and unjust, so as to undermine the credibility of the criminal process in our courts." *Id.* at 1344–45.

## III.

In this case, the predicate for the trial court's decision to disqualify the district attorney's office was the conclusion that there was a colorable claim of theft of medical records against the personnel director, and the appearance that the district attorney's office had somehow abetted or induced that crime.

The defense presented expert testimony that the drug-test results and physical ability tests of both employees, and medical information related to Padilla fell under the medical record definition of section 18–4–412. The court noted the uncontested fact that the personnel manager did not have either Palomo's or Padilla's permission to release the files and found that the defense had established a prima facie case against the person-

nel manager for theft of medical records. Although the court did not find any actual improprieties by the prosecution, it stated that:

> [T]he prosecution's office is compromised to the extent that it may be difficult to make decisions about prosecution in this case without taking into account how those decisions are going to affect [the personnel manager], and other witnesses who ... have relied upon representation and authority of the district attorney's office to give them authorization [to release the files]. That now places those individuals at risk of both civil and criminal liabilities. And it's that exact conflict which causes the Court some difficulty.

### A.

We begin by discussing the trial court's finding that the defense established a prima facie case of theft of medical records against the personnel director. Under the theft of medical records statute:

> Any person who, without proper authorization, knowingly obtains a medical record or medical information with the intent to appropriate the medical record or medical information to his own use or to the use of another, who steals or discloses to an unauthorized person a medical record or medical information, or who, without authority, makes or causes to be made a copy of a medical record or medical information commits theft of a medical record or medical information.

§ 18–4–412(1). The statute defines "medical record" as "the written or graphic documentation ... of services pertaining to medical and health care which are performed at the direction of a physician or other licensed health care provider *on behalf of a patient.*" § 18–4–411(2)(a) (emphasis added). "Medical information" means "any information contained in the medical record or any information pertaining to the medical and health care services performed at the direction of a physician or other licensed health care provider which is protected by the physician-patient privilege." § 18–4–411(2)(b).

 Palomo's and Padilla's files both contained drug screening test results and physical ability test results. We do not view those documents as medical records either under the medical record or the medical information definitions of section 18–4–412(2). First, neither test was performed "on behalf of a patient." Employees do not submit to these tests in order to receive some type of treatment. Instead, they submit to the tests for the benefit of the employer as a condition of employment. We note that even the Americans with Disabilities Act of 1990 does not treat a drug test designed to detect the ingestion of illegal substances as a medical examination. 42 U.S.C. § 12114(d)(1) (1994). Thus, any information obtained from a drug test that does not involve a disability is not considered part of an employee's medical record. Dana Devon, *Drug Testing of Health Care Workers: Toward a Coherent Hospital Policy*, 23 Am. J.L. & Med. 399, 446 (1997). The drug screening tests and physical ability tests were more akin to employment related written or verbal examinations that the employee undertook in order to qualify for the job.

Second, neither test falls under the physician-patient privilege. The physician-patient privilege states that "[a] physician ... shall not be examined without the consent of his patient as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." § 13–90–107(1)(d), 5 C.R.S. (2000). In *Hanlon v. Woodhouse*, we held that the physician-patient privilege did not prevent a doctor from testifying about a blood alcohol test performed on a patient because there was "no showing that the running of the alcohol test was in any degree necessary to enable the physician properly to treat defendant." 113 Colo. 504, 509–10, 160 P.2d 998, 1001 (1945). Similarly, the record here does not indicate that either the drug screening or the physical ability tests were performed in order to enable a physician to treat Palomo or Padilla. Thus, the physician-patient privilege does not cover either test.

Because we conclude that the drug screening and physical ability test results do not fall under the definition of either medical record or medical information, the defense failed to establish a prima facie case of theft of Palomo's medical records. Thus, there is no basis for a theft of medical records charge

against the personnel director as to Palomo, the defendant.

### B.

On the other hand, there is information in Padilla's file that relates to medical tests and examinations performed upon her that pertained to a work-related injury and an unrelated disability claim.[2]

Thus, we now turn to the question of whether or not the existence of what could be medical information in Padilla's personnel file itself raises enough of an appearance of impropriety to warrant the removal of the district attorney and Capital Crimes Unit from the case.

 We conclude that it does not. Although the appearance of impropriety is a very nebulous standard and trial courts have a large amount of discretion in determining when it exists, we have held that a trial court may not remove a district attorney from a case when the chance of an appearance of impropriety is merely prospective. *Riboni v. Dist. Court,* 196 Colo. 272, 275, 586 P.2d 9, 12 (1978).

Any possible wrongdoing by the personnel director is limited to Padilla's file. Consequently, any appearance of wrongdoing by the district attorney's office is limited to Padilla's file. Thus, the possibility of a conflict of interest rests on the prospective chance that the prosecution could seek to introduce Padilla's file into evidence. Should that happen, the personnel director might testify that the investigator never told him to redact medical and psychological records from the Padilla file. Such testimony could perhaps buttress a case against the district attorney's office for theft of medical records.

However, this case is in its initial phases. The record fails to indicate whether Padilla's medical records may be relevant in some way to either the prosecution or the defense. In the event that the Padilla medical records become an issue, the trial court must first determine the relevancy of this evidence to the party seeking either its discovery or admission into evidence. Then, the question of whether the personnel manager should testify may become an issue.

This court has held on several occasions that the determination of whether a district attorney should be disqualified in a criminal case depends upon whether the appearance of impropriety is of sufficient consequence to prevent a fair trial. *Garcia,* 698 P.2d at 805; *see also Riboni,* 196 Colo. at 274, 586 P.2d at 11. In *Garcia,* the trial court found an appearance of impropriety based on the district attorney's endorsement of one of his deputy district attorneys as a witness in the case. 698 P.2d at 804. This court found that the deputy district attorney's testimony in *Garcia* was relevant and necessary to prove the culpable mental state necessary for the charged offense. *Id.* at 806. Thus, we upheld the trial court's finding that an appearance of impropriety existed at the time the defendant filed the motion.

However, in *Riboni,* we held that an appearance of impropriety did not exist where there was a mere chance that the district attorney could be called as an impeachment witness. 196 Colo. at 275, 586 P.2d at 12. The defendant argued that the district attorney would testify as to two conflicting statements made by a witness to an accident. *Id.* at 274, 586 P.2d at 11. We found no showing that the witness would testify one way or another. *Id.* Thus, there was no indication that the impeachment evidence would be relevant, or even admissible. *Id.*

In this case, disqualification would rest at present upon the chance that the prosecution might call the personnel manager to testify regarding Padilla's personnel file. We have no evidence in this record to support a determination that the possibility of that circumstance would itself cause such an appearance of impropriety as to prevent Palomo from receiving a fair trial. Therefore, we disagree with the trial court's reliance on a possible future appearance of impropriety to warrant the removal of the district attorney and Capital Crimes Unit.

 We also note that Palomo bases his argument on the method by which the prosecution obtained Padilla's personnel file, but Palomo has no standing to assert Padilla's physician-patient privilege.

---

2. We decline to opine about whether there would still be a colorable claim of theft against the personnel director, given the lack of a living victim whose records are at issue.

■ The physician-patient privilege is personal to the patient or her estate. *Stauffer v. Karabin*, 30 Colo.App. 357, 362, 492 P.2d 862, 864 (1971). Courts routinely deny defendants the standing to assert a third party's right, including the physician-patient privilege. *Knight v. State*, 207 Ga.App. 846, 429 S.E.2d 326, 327 (1993) (holding that defendant had no standing to assert his wife's privacy right pertaining to medical records introduced into evidence at trial); *People v. Wood*, 447 Mich. 80, 523 N.W.2d 477, 482 (1994) (stating that a defendant has no standing to invoke a third party's privilege in either a criminal or civil action); *State v. Evans*, 802 S.W.2d 507, 511 (Mo.1991) (stating that "the physician-patient privilege is personal to the patient, and generally no person ... other than the patient may so object"); *Osborn v. Fabatz*, 105 Mich.App. 450, 306 N.W.2d 319, 322 (1981) (holding that the defendant had no standing to invoke a third party's physician-patient privilege in a paternity action).

Hence, it falls not to the defendant in this case to raise issues concerning the medical records in Padilla's file, but rather to the estate or family. The defendant here may certainly bring concerns to the attention of the court, as he has; however, his right to claim injury is limited by the general principles of standing.

■ Lastly, we observe that the remedy must be tailored to the problem. Here, there are other remedies that the trial court should consider as an alternative to disqualification. Courts should impose the least severe sanctions necessary to remedy improper conduct by the parties. *See People v. Dist. Court*, 808 P.2d 831, 836–37 (Colo.1991) (stating that in "serving the purpose of protecting the truth-finding process, we have required that the sanction be no more restrictive than necessary to protect the defendant's right to due process." (Internal quotation marks omitted)). In this case, the trial court should fashion a more appropriate remedy for the circumstances. This could include appointing a special prosecutor for the sole purpose of determining whether it is proper to grant transaction immunity to the personnel manager in exchange for his testimony. In addition, should criminal charges arise for the theft of medical records against the personnel manager, the trial court may properly appoint a special prosecutor to prosecute that case.

■ If the information contained in Padilla's personnel file does constitute medical information, then it is protected by the physician-patient privilege. Absent a waiver by the patient, the physician-patient privilege prohibits pretrial discovery of information within the scope of the privilege. *People v. Overton*, 759 P.2d 772, 774 (Colo.App.1988). The proper remedy in this case could be for the trial court to address the issue as a discovery violation or a suppression matter. If the files either fall under the definition of medical records or are protected by the Fourth Amendment, then the proper remedy could be suppression of the files, not disqualification of the prosecution. Even if the files are not protected by the Fourth Amendment, then there may be civil remedies available to an injured party.

IV.

In conclusion, we hold that the drug screening and physical ability tests present in both files do not fall under the rubric of medical records or medical information for purposes of the theft of medical records statute. Hence, the potential of an appearance of impropriety turns on the information disclosed from Padilla's file. At this stage of the proceedings, the remedy of disqualification for the appearance of impropriety in relationship to the victim's medical records is too severe. There are other remedies that the trial court should consider when timely. Therefore, we conclude that the trial court abused its discretion in finding the present appearance of impropriety sufficient to warrant removal of the district attorney and Capital Crimes Unit in this case. The district attorney and Capital Crimes Unit may proceed with the prosecution. The rule is made absolute, and the trial court is directed to conduct further proceedings in accordance with this opinion.