The PEOPLE of the State of Colorado, Plaintiff–Appellant and Cross–Appellee,

v.

Michael WITTY, Defendant–Appellee and Cross–Appellant.

No. 99CA0360.

Colorado Court of Appeals, Div. II.

Oct. 26, 2000.

As Modified on Denial of Rehearing Feb. 1, 2001.

Certiorari Pending as of March 20, 2001 (01SC167).

Jeanne M. Smith, District Attorney, David H. Zook, Chief Deputy District Attorney, Colorado Springs, CO; Ken Salazar, Attorney General, John J. Krause, First Assistant Attorney General, Denver, CO, for Plaintiff–Appellant and Cross–Appellee.

David S. Kaplan, Colorado State Public Defender, Dana Nichols, Deputy State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, CO, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge STERNBERG.*

The Fourth Judicial District Attorney (District Attorney) challenges on appeal the disqualification of her office and the appointment of a special prosecutor in a criminal action against defendant, Michael Witty. In that action, defendant entered a guilty plea to the charge of felony theft, but with the District Attorney's consent, specifically reserved the right to appeal, as he does now on cross-appeal, on the basis that his speedy trial rights had been violated. We affirm the order of disqualification and reverse the conviction.

On August 14, 1997, defendant was charged by information with felony theft from an at-risk adult in connection with management of a private testamentary trust, and he entered a not guilty plea on February 9, 1998. On March 10, 1998, defendant moved to disqualify the District Attorney and for the appointment of a special prosecutor.

In seeking disqualification of the District Attorney, defendant made reference to an earlier unrelated case against him. He noted that he had been the Pension Fund Manager for the El Paso County Retirement Plan (the Plan), that in the earlier case, he had been charged with 46 felony counts of theft involving the Plan, and that he had been ordered to pay approximately $500,000 in restitution. Defendant was serving consecutive sentences of 10 and 18 years as the result of conviction in that case.

Defendant also alleged that all employees of the District Attorney's office were members of the Plan, that the office had been disqualified in the previous case, that the Plan had sued defendant in a civil action, and that defendant had counterclaimed against the Plan. These allegations were uncontroverted, and no request for an evidentiary hearing was made.

On June 4, 1998, the trial court granted the motion and disqualified the District Attorney's office on the basis of an appearance of impropriety. On July 20 it appointed the District Attorney of the Second Judicial District to be special prosecutor.

Seeking to overturn the disqualification, the District Attorney filed a petition for a writ in the nature of prohibition in the supreme court on July 7, 1998. The supreme court denied the petition the next day.

The District Attorney then appealed the issue of her disqualification to this court on July 20, 1998. Because there was no final judgment, this court dismissed that appeal without prejudice on December 8, 1998, issuing its mandate on January 4, 1999.

On January 12, 1999, 337 days after entry of his not guilty plea, defendant changed his plea to guilty, reserving the right to appeal on speedy trial grounds. This appeal and cross-appeal followed.

I.

In challenging her disqualification from prosecuting this case, the District Attorney's

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.2000.

principal contention is that the doctrine of separation of powers prohibits the court from disqualifying an elected district attorney on grounds other than those set forth by statute. She also contends that defendant waived his standing to request disqualification and that the trial court abused its discretion in finding an appearance of impropriety. We are not persuaded.

### A.

In support of the separation of powers argument, the District Attorney relies upon the following constitutional and statutory provisions:

District Attorneys shall ... perform such duties as provided by law.

Colo. Const. art. VI, § 13.

Every District Attorney shall appear on behalf of the state and the several counties of his district: (a) In *all* indictments, actions, and proceedings which may be pending in the district court in any county within his district wherein the state or the people thereof or any county of his district may be a party....

Section 20–1–102(1), C.R.S.2000 (emphasis added).

The chief deputy district attorney has all the powers of the district attorney.

Section 20–1–204, C.R.S.2000.

The District Attorney points to three instances in which the General Assembly has authorized the appointment of a special prosecutor: the district attorney's interest in a case, § 20–1–107, C.R.S.2000; sickness or absence, § 20–1–108, C.R.S.2000; and refusal to prosecute, § 16–5–209, C.R.S.2000. The District Attorney argues that a court may disqualify her on one of these grounds and no other. Because "appearance of impropriety" is not one of the statutorily enumerated grounds for disqualification, the District Attorney argues that the court erred in disqualifying her on this basis.

In making this argument, the District Attorney urges that we limit the following language in *People v. Garcia*, 698 P.2d 801, 806 (Colo.1985):

[T]he determination of whether a district attorney and his staff should be disqualified is a matter largely within the discretion of the district court.

Instead, the District Attorney urges us to follow an earlier opinion in which the supreme court stated that: "Under the Constitution, the legislature is the only body empowered to circumscribe the duties of the district attorney...." *People ex rel. Losavio v. Gentry*, 199 Colo. 153, 159, 606 P.2d 57, 61 (1980).

In *Losavio,* the district court appointed a special prosecutor to investigate allegations of budgetary improprieties in certain county agencies, possibly including the district attorney's office. The special prosecutor's investigation resulted in indictment of a county commissioner on charges of embezzlement of public property. Thereafter, the special prosecutor also sought to prosecute the county commissioner on a charge of theft of a trailer, which had nothing to do with budget improprieties. The county commissioner challenged the special prosecutor's authority to investigate the alleged theft, and the supreme court held that the special prosecutor had exceeded his authority in investigating and prosecuting any matter beyond the scope of budgetary irregularities.

In our view, the *Losavio* case is distinguishable on its facts. The reason for disqualification there—investigation of budgetary irregularities that might have involved the district attorney's office—no longer was present here where the prosecution related to an unrelated charge. The quoted language cannot be held to limit the court's discretion to disqualify a district attorney in this case where the appearance of impropriety exists.

Although not addressing the separation of powers issues raised here, Colorado appellate courts have approved the disqualification of district attorneys in cases where an appearance of impropriety exists. For example, the supreme court has said:

The trial court should consider whether disqualification appears reasonably necessary "to insure ... the fairness *or appearance of fairness of trial,* the orderly or efficient administration of justice, or *public*

*trust or confidence* in the criminal justice system."

*People v. Garcia, supra,* 698 P.2d at 806 (emphasis added). *See Pease v. District Court,* 708 P.2d 800 (Colo.1985)(district attorney disqualified from prosecuting case in which two former prosecutors from that office were material witnesses); *People v. Stevens,* 642 P.2d 39 (Colo.App.1981)(convictions reversed where trial court denied defendant's motion for appointment of special prosecutor on ground that defendant's prior attorney worked in office of district attorney who tried the case). *See also Board of Commissioners v. Crump,* 18 Colo.App. 59, 70 P. 159 (1902)(trial court has the inherent power to appoint a special prosecutor to assist a district attorney; case does not deal with question of disqualification). We do not find cases from other jurisdictions cited by the District Attorney to be persuasive.

Although premised on interpretation of the California Constitution, *People v. Superior Court,* 19 Cal.3d 255, 137 Cal.Rptr. 476, 561 P.2d 1164 (1977), does address the issue whether judicial disqualification of the district attorney is a separation of powers violation, and we agree with its reasoning. There, the district attorney charged the defendant with murder in a case where the victim's mother was employed as a clerk in the district attorney's office. The trial court concluded that, under these circumstances, the district attorney should be disqualified and, therefore, directed the attorney general to prosecute the case. The attorney general appealed, claiming a separation of powers violation.

■ The California Supreme Court found no such violation, holding that the California constitutional prohibition against any branch of state government exercising the powers of another branch did not prohibit judges from disqualifying a prosecutor whose participation would "taint the proceeding." *People v. Superior Court, supra,* 19 Cal.3d at 265, 137 Cal.Rptr. 476, 561 P.2d at 1171. The court reasoned that once the decision to prosecute has been made, the disposition of the charge becomes a judicial responsibility. A denial of a trial judge's authority to disqualify a district attorney would undermine the judge's traditional power to enforce the law, and this could lead to absurd results. For example, a trial judge without power to disqualify a prosecutor for a conflict of interest would be forced to preside over a proceeding that the judge finds "improper and which appears destined for reversal on appeal." *People v. Superior Court, supra,* 19 Cal.3d at 264, 137 Cal.Rptr. 476, 561 P.2d at 1170.

■ In words applicable here, the court reasoned that:

It was within the bounds of the court's discretion to determine that the prosecutor might *at least appear* to have an emotional stake in the case of the sort which could disturb his exercise of impartial judgment in pretrial and trial proceedings.

*People v. Superior Court, supra,* 19 Cal.3d at 270, 137 Cal.Rptr. 476, 561 P.2d at 1174 (emphasis supplied).

The Attorney General urges us not to rely on that decision because the California legislature subsequently adopted a statute applying different standards to disqualification of a prosecutor. Thus, Cal.Penal Code § 1424 (1999) now provides that disqualification may be ordered only where "a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." Regardless of the effect in California of that statute, we view it as neither weakening the rationale nor diminishing the legal reasoning of *People v. Superior Court,* which we find persuasive.

The Attorney General also notes that the Colorado Rules of Professional Conduct (Rules) adopted in 1993 replaced the Code of Professional Responsibility (Code). In Canon 9 of the Code, "appearance of impropriety" was specifically mentioned as an ethical standard; in the Rules it is not. Thus, the Attorney General argues that appearance of impropriety should no longer be considered as a basis for disqualification.

■ We are unwilling to attempt to make that logical leap, and thus decline to hold that, by its adoption of the Rules and repeal of the Code, the supreme court intended to overrule longstanding case law including such cases as *People v. Garcia, supra.* The

power of a court to excuse a prosecutor exists independently of either the Rules or the Code. *See* Hennessey, *Colorado's New Rules of Professional Conduct,* 21 Colo. Law. 2101 (Oct.1992)(the Rules are not the sole source of guidance—they simply provide the framework for the ethical practice of law).

For well over a century, it has been the law in Colorado that a trial court may excuse a district attorney from prosecuting a case and appoint another "for good and sufficient reasons other than those specified in the statute." *Roberts v. People,* 11 Colo. 213, 17 P. 637 (1888); *see also People ex rel. Lindsley v. District Court,* 29 Colo. 5, 66 P. 896 (1901) (district court has the inherent power to protect itself and direct grand jury investigation in a manner which would render it thorough and impartial). It is the responsibility of the court to see not only that justice is done but also that it appears that justice is being done.

Courts in other jurisdictions that have adopted the Model Rules of Professional Conduct also have concluded that the appearance of impropriety continues to be a valid ground for disqualification even though the standard is not codified. In *First American Carriers, Inc. v. Kroger Co.,* 302 Ark. 86, 92, 787 S.W.2d 669, 672 (1990), the Arkansas Supreme Court stated that, although not expressly adopted in the Model Rules of Professional Conduct, the appearance of impropriety standard could be found in "what the preamble to the Rules refers to as 'moral and ethical considerations' that should guide lawyers, who have 'special responsibility for the quality of justice.' "

In *Turbin v. Superior Court,* 165 Ariz. 195, 797 P.2d 734 (Ct.App.1990), the Arizona Court of Appeals rejected the argument that, under the state's version of the Model Rules of Professional Conduct, a prosecutor's office could not be disqualified absent a showing of actual prejudice against a defendant. The court found an appearance of impropriety standard to be the better test for two reasons. First, in many cases actual prejudice may exist but be extremely difficult to prove. Second, requiring a showing of actual prejudice ignores the principle that criminal prosecutions must appear fair.

The reasoning of the Arkansas and Arizona courts is compelling. A prosecutor is both an advocate and an administrator of justice. *People v. Small,* 631 P.2d 148 (Colo.1981)(citing ABA, *Standards for Criminal Justice,* Standards 3–1.1(b) and 3–1.1(c) (2d ed.1980)).. Like a judge, he or she represents the government as a whole. Thus, to maintain the public's confidence that the system is fair, perceived improprieties must be avoided. *See* Flowers, *What you See Is What you Get: Applying the Appearance of Impropriety Standard to Prosecutors,* 63 Mo. L.Rev. 699 (1998).

▪ Here, as in *People v. Superior Court, supra,* the district attorney's emotional stake in prosecuting defendant might appear to interfere with the exercise of impartial judgment in plea negotiations and other pretrial and trial proceedings. *See* § 16–7–301(3), C.R.S.2000 ("Defendants whose situations are similar should be afforded similar opportunities for plea agreement.").

If the court, in the exercise of its discretion, perceives that an appearance of impropriety would undermine public confidence in the administration of justice, it is within its authority to disqualify the district attorney. Here, the trial court's order was based on uncontroverted facts giving rise to a legitimate concern that an appearance of impropriety would be created. Thus, we hold the trial court did not violate the separation of powers doctrine in disqualifying the district attorney's office.

### B.

Relying upon *People v. Jiminez,* 187 Colo. 97, 528 P.2d 913 (1974), the District Attorney next argues that, by engaging in plea negotiations, defendant waived his right to request disqualification.

In *Jiminez,* the supreme court held that, if a defendant knows of grounds for disqualification prior to trial but makes no objection or request for disqualification, he or she may not assert that ground as a basis for reversal. The rationale for the decision was:

> A defendant will not be permitted, as a matter of trial strategy, to conceal error

during trial ... and upon an adverse result assert as grounds for reversal the error he should have revealed to the court.

187 Colo. at 102, 528 P.2d at 916.

■ Here, there was no concealment by defendant of a possible basis for reversal; indeed, defendant raised the issue by motion at an early stage. Consequently, *People v. Jiminez* has no relevance here, and the District Attorney's contention fails.

### C.

■ We also reject the District Attorney's argument that, under the facts before it, the trial court abused its discretion in ruling that there was an appearance of impropriety. To the contrary, had the court failed to disqualify the District Attorney's office on these facts, defendant would have had solid ground for an appeal on the issue.

### II.

In the cross-appeal, defendant contends that the trial court erred when it declined to dismiss the charges against him for violation of the speedy trial statute. We agree that defendant's statutory speedy trial rights were violated.

Section 18–1–405(1), C.R.S.2000, provides that:

[I]f a defendant is not brought to trial on the issues raised by the complaint, information, or indictment within six months from the date of the entry of a plea of not guilty, he shall be discharged from custody [and] the pending charges shall be dismissed....

Under § 18–1–405(6), C.R.S.2000, certain periods are to be excluded in computing the time within which a defendant must be brought to trial. Among these is the "period of delay caused by an *interlocutory* appeal whether commenced by the defendant or by the prosecution." Section 18–1–405(6)(b), C.R.S.2000 (emphasis added).

Whether the speedy trial period has run here turns on treatment of the five and one-half months between July 20, 1998, when the District Attorney first appealed to this court, and January 4, 1999, when the appeal was dismissed. If that appeal was "interlocutory" under § 18–1–405(6)(b), the speedy trial period had not run; conversely, if it was not, defendant's speedy trial rights were violated.

■ The Attorney General argues that the speedy trial period was extended both by the District Attorney's original proceeding in the supreme court and by the appeal to this court because each was an "interlocutory appeal." Defendant asserts that the speedy trial period had run because there was no interlocutory appeal within the meaning of § 18–1–405(6)(b). We agree with defendant.

In *People v. Gallegos,* 946 P.2d 946, 953 (Colo.1997), the supreme court held that an "interlocutory appeal," for purposes of the speedy trial statute, is an:

appeal which is taken in good faith before a defendant has been convicted and sentence is imposed, and which necessarily disrupts the course of proceeding to a final resolution of the allegations before the court. An appeal is taken in good faith when the assertion that such an appeal is authorized has arguable merit, is not taken for the purpose of delay, and the *issues raised have a substantial effect on the prosecution's case.* An appeal necessarily disrupts the course of proceeding to a final resolution when, *absent a stay of the proceedings, there can be no effective remedy.* (emphasis added)

Under these criteria, the District Attorney's appeals were not interlocutory; the issue that was appealed—the order disqualifying the District Attorney—had no substantial effect on the prosecution's case, given the pending appointment of a special prosecutor. While an order disqualifying the District Attorney's office may create some delay attributable to the defendant, it has no substantial effect on the prosecution's case for purposes of determining whether appeal of that order is an interlocutory appeal.

When a competent special prosecutor has been appointed, the case can proceed, and the District Attorney's interest in ensuring that justice is done has been met. *See* § 20–1–107, C.R.S.2000; *Harris v. People,* 888 P.2d 259 (Colo.1995). Such was the case

here. A defendant, presumed innocent, should not have his or her period of incarceration extended while the government sorts out who should prosecute. Thus, the delay in prosecution was not reasonable.

When the one-month period between defendant's not guilty plea and the filing of the motion for a special prosecutor is added to the time between the granting of the motion and the plea of guilty, the six-month speedy trial period was exceeded.

 The Attorney General also argues in the alternative that under § 18–1–405(6)(h), C.R.S.2000, the speedy trial period was extended by three months. We do not agree.

Section 18–1–405(6)(h) excludes from the speedy trial period the delay between the expiration of certain other periods of exclusion and the new date set for trial thereafter, "not to exceed three months." In interpreting § 18–1–405(6)(e), C.R.S.2000, which addresses delays caused by mistrials, the supreme court has concluded that the phrase "not to exceed three months" means that delays to be excluded must be reasonable and not longer than three months. *People v. Pipkin,* 655 P.2d 1360 (Colo.1982); *Pinelli v. District Court,* 197 Colo. 555, 595 P.2d 225 (1979). Applying this interpretation to the identical language in § 18–1–405(6)(h), we conclude that the time for speedy trial could be extended up to three months only if such a delay in setting a new trial were reasonable. As noted above, we do not view the delay here as being reasonable.

Accordingly, we conclude the trial court should have granted defendant's motion to dismiss the charges against him.

The disqualification of the District Attorney is affirmed. The judgment of conviction is reversed, and the cause is remanded with directions to dismiss the charges.

TAUBMAN and NIETO, Judges, concur.