The PEOPLE of the State of Colorado, Appellant

In the Interest of N.R., a juvenile, now emancipated, Appellee.

The People of the State of Colorado,

In the Interest of N.R., a juvenile, now emancipated.

Nos. 05SA273, 05SA294.

Supreme Court of Colorado, En Banc.

June 26, 2006.

As Modified on Denial of Rehearing July 31, 2006.

---

Robert E. Watson, District Attorney, Thirteenth Judicial District, Robert C. James, Deputy District Attorney, Burlington, Colorado, Attorneys for Appellant.

Haddon, Morgan, Mueller, Jordan, Mackey & Foreman, P.C., Saskia A. Jordan, Gail K.

Johnson, Denver, Colorado, Attorneys for Appellee.

Justice RICE delivered the Opinion of the Court.

## I. Facts and Procedural History

This case arises from a one-vehicle accident that occurred in Yuma County on or about February 18, 2002. Mallory Funaro, who was fifteen years old at the time of the accident, was driving a truck in which sixteen-year-old N.R. was a passenger. The truck rolled over; Funaro was ejected from the truck and ended up pinned underneath it. She was alive, but seriously injured. N.R. was aware that Funaro was alive and pinned under the truck, but he left the accident scene and did not inform anyone of Funaro's predicament.

Law enforcement discovered the accident and Funaro at approximately 3:00 a.m., some two hours after the accident. Funaro was still alive and pinned under the truck, wearing jeans and a sports bra with no jacket. The temperature was below freezing in the two hours Funaro spent pinned under the truck. Funaro was transported to Yuma Hospital, where she died after seventeen days of unsuccessful medical care.

At the time of the accident, the District Attorney for the Thirteenth Judicial District, which encompasses Yuma County, was Mark T. Adams. District Attorney Adams investigated the case and determined that there was not sufficient evidence to convict N.R. of any crime in connection with the accident. He therefore declined to press charges against N.R. On September 29, 2004, Brian and Beverly Funaro filed a Petition for Order Requiring District Attorney to Explain Refusal to Prosecute under section 16–5–209, C.R.S. (2005).

In the November 2004 general election, Robert Watson replaced Adams as the District Attorney for the Thirteenth Judicial District. On February 17, 2005, District Attorney Watson brought a juvenile-delinquency petition charging N.R. with committing acts in connection with Funaro's death that if

committed by an adult, would constitute the offenses of attempted second-degree murder, section 18–3–103(1), 18–2–101 C.R.S. (2005), manslaughter, *id.* section 18–3–104(1)(a), three counts of attempt to influence a public servant, *id.* section 18–8–306, two counts of contributing to the delinquency of a minor, *id.* section 18–6–701, criminally negligent homicide, *id.* section 18–3–105, and conspiracy to commit attempt to influence a public servant, *id.* sections 18–8–306, 18–2–201.[1]

On June 2, 2005, N.R. filed a Motion to Dismiss or, in the Alternative, to Disqualify District Attorney Robert Watson and Appoint a Special Prosecutor. This motion argued, among other things, that there was no probable cause to support the attempted second-degree murder charge. In an order dated July 20th, 2005, Yuma County District Judge Steven E. Shinn, viewing the facts in the light most favorable to the prosecution, determined that probable cause existed to support the charges against N.R., including the attempted second-degree murder charge, and bound the case over for trial.

On September 12, 2005, Yuma County District Judge Michael Singer issued an order on N.R.'s Motion to Dismiss or, in the Alternative, to Appoint a Special Prosecutor. Judge Singer denied N.R.'s motion to dismiss primarily because of Judge Shinn's previous determination that probable cause supported the allegations against N.R.

With respect to N.R.'s request for disqualification, Judge Singer first considered section 20–1–107(2) of the Colorado Code, which authorizes disqualification of a district attorney when "the court finds that the district attorney has a personal or financial interest or special circumstances exist that would render it unlikely that the defendant would receive a fair trial." Noting that the legislature amended section 20–1–107 in 2002, Judge Singer concluded that the amended version of the statute should apply because District Attorney Watson filed the juvenile-delinquency petition in 2005. Applying this section to the instant case, Judge Singer ruled that the district attorney's office did

---

1. Shortly after the filing of these charges, the Funaros' Petition for Order Requiring District Attorney to Explain Refusal to Prosecute was dismissed as moot.

not have an interest in the case that required its disqualification.

However, Judge Singer ruled that disqualification was necessary because of an "appearance of impropriety." Judge Singer concluded that continued prosecution of N.R. by District Attorney Watson would create an appearance of impropriety because Watson had "enjoyed substantial political support from the mother of the victim" in his campaign for district attorney and because Watson's decision to prosecute N.R. reversed the "rather strongly held position" of former District Attorney Adams that prosecution of N.R. was inappropriate. Judge Singer further concluded that an appearance of impropriety required the disqualification of Assistant District Attorney Steve Jones, who had "had a significant amount of involvement with the case during Mr. Adams' tenure."

To remedy the appearance of impropriety, Judge Singer ordered District Attorney Watson to choose another deputy district attorney from the Thirteenth District to prosecute the case. He further ordered Watson to erect an "ethical wall" to prevent Watson and Jones from having any further involvement in the case.

On September 19, 2005, the People filed a notice of interlocutory appeal of the court's order disqualifying Watson and Jones. On October 11, 2005, N.R. filed a combined Petition for a Rule to Show Cause Pursuant to C.A.R. 21 and Motion to Consolidate Original Proceeding with Pending Interlocutory Appeal. The Petition to Show Cause requested this court "to issue a rule to show cause why the District Attorney and his office do not have a conflict of interest in prosecuting this case and why a special prosecutor from outside the Thirteenth Judicial District should not be appointed." On October 20, 2005, this court granted N.R.'s motion to consolidate his petition with the People's interlocutory

appeal and issued the requested rule to show cause.

## II. Analysis

We are faced, on the one hand, with the People's appeal of the trial court's decision to disqualify Watson and Jones because of an appearance of impropriety, and on the other hand, with N.R.'s argument that the district court should have found a conflict of interest and disqualified the entire Thirteenth Judicial District Attorney's Office (hereinafter District Attorney's Office). We reject N.R.'s argument that there is a conflict of interest in this case, and we agree with the People that the trial court erred in disqualifying Watson and Jones. We therefore discharge the rule and reverse the trial court's disqualification order.

This opinion proceeds as follows. First, we conclude that the 2002 amendment to section 20-1-107 eliminated "appearance of impropriety" as a basis for disqualification of district attorneys. Next, we apply section 20-1-107 to the instant case and conclude that it does not authorize disqualification.

### A. The Trial Court Erred in Basing Disqualification on an Appearance of Impropriety

 Prior to its amendment in 2002, section 20-1-107 provided for disqualification "[i]f the district attorney is interested or has been employed as counsel in any case which it is his duty to prosecute or defend." § 20-1-107, C.R.S. (2001) (amended 2002). The amended version of section 20-1-107 specifies that "[a] district attorney may only be disqualified in a particular case at the request of the district attorney or upon a showing that the district attorney has a personal or financial interest or finds special circumstances that would render it unlikely that the defendant would receive a fair trial." § 20-1-107(2), C.R.S. (2005).[2] *See* An Act Concern-

---

2. Because the legislature has made no changes to the statute since the 2002 amendment, we cite to the 2005 version of the statute. Also, we construe section 20-1-107(2) to permit disqualification when the trial court, and not the district attorney, finds special circumstances that would render it unlikely that the defendant would receive a fair trial. We are aware that this provi-

sion could be interpreted to allow disqualification only if the district attorney finds the "special circumstances." However, the section later provides that a motion to disqualify shall not be granted unless "the court finds that ... special circumstances exist that would render it unlikely that the defendant would receive a fair trial." We are persuaded that this is the meaning the

ing Procedural Changes for the Strengthening of Criminal Laws, ch. 210, sec. 4, § 20–1–107(2), 2002 Colo. Sess. Laws 758–59 (making this amendment).

We conclude that, in using the word "only" and defining with specificity the circumstances under which disqualification is proper, the amended version of section 20–1–107 eliminates "appearance of impropriety" as a basis for disqualification.[3] Therefore, the trial court did not have the authority to disqualify Watson and Jones on this basis. *See DeLong v. Trujillo*, 25 P.3d 1194, 1197 (Colo. 2001) (concluding that an error of law constitutes an abuse of discretion). Below we consider whether disqualification was appropriate under section 20–1–107.

## B. Section 20–1–107 Does Not Authorize Disqualification in This Case

### 1. The Amended Version of Section 20–1–107 Controls This Appeal

■ Before applying the statute to the trial court's disqualification order, we must answer the preliminary question of whether the amended version of the statute controls the case. The accident that gave rise to this prosecution occurred in February 2002, some five months before July 2002, the date on which the amended version of section 20–1–107 became effective. However, the conduct governed by section 20–1–107 is not N.R.'s behavior on the night of the accident, but District Attorney Watson's decision to file

---

legislature intended. "We construe a statute so as to give effect to every word, and we do not adopt a construction that renders any term superfluous." *Slack v. Farmers Ins. Exchange*, 5 P.3d 280, 284 (Colo.2000). In light of the earlier provision permitting prosecutors to request their own disqualification, requiring that the "special circumstances" be found by the prosecutor would render this latter provision superfluous. We therefore conclude that this finding is to be made by the court.

3. The amended version of section 20–1–107 contains a "legislative declaration" that states, "The general assembly finds that the office of the district attorney was created by the state constitution and that the state constitution gives to the general assembly the exclusive authority to prescribe the duties of the office of the district attorney." § 20–1–107(1), C.R.S. (2005). This legislative declaration arguably conflicts with this court's statement in *In Interest of J.E.S.*, 817 P.2d 508 (Colo.1991), that the inherent powers of the judiciary include " '[a]ll powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective.' " *Id.* at 511 (quoting *Pena v. District Court*, 681 P.2d 953 (Colo.1984). It also appears to contradict a number of cases in which we have suggested that the courts' authority to disqualify district attorneys extends beyond the authority granted to them by statute. *See In re Estate of Myers*, 130 P.3d 1023, 1025 (Colo.2006) ("[W]e have often noted that courts have the inherent power to ensure both the reality and appearance of integrity and fairness in proceedings before them; and to that end, they necessarily retain the discretion to disqualify attorneys from further representation.") (citing *People v. Garcia*, 698 P.2d 801, 806 (Colo.1985)); *Garcia*, 698 P.2d at 805–06 (upholding trial court's order disqualifying district attorney because of an "appearance of impropriety" and relying on the

Code of Professional Responsibility and the Model Rules of Professional Responsibility); *McFarlan v. District Court*, 718 P.2d 247, 249 (Colo. 1986) ("We have recognized that the appearance of impropriety standard of Canon 9 is applicable to the question of whether an attorney must be prohibited from participating as a prosecutor in criminal litigation."); *People ex rel. Lindsley v. Dist. Court*, 29 Colo. 5, 15–16, 66 P. 896, 899 (1901) (holding that, where the trial court suspected that the district attorney may have been involved in a crime, the court had authority to appoint an attorney from outside the district attorney's office, in part because "[t]he district court has the inherent power to protect itself and direct investigations in a manner which will render them thorough and impartial") (citing *Roberts v. People*, 11 Colo. 213, 17 P. 637 (1888)); *Roberts*, 11 Colo. at 215, 17 P. at 638 (noting that even in the absence of statutory grounds that support disqualification and appointment of a substitute district attorney, "we are not prepared to say that a *nisi prius* court may not make such an appointment for good and sufficient reasons other than those specified in the statute"); *see also People v. Witty*, 36 P.3d 69, 73 (Colo.App. 2001) ("For well over a century, it has been the law in Colorado that a trial court may excuse a district attorney from prosecuting a case and appoint another 'for good and sufficient reasons other than those specified in the statute.' ") (quoting *Roberts*, 11 Colo. at 215, 17 P. at 638); *but see People v. C.V.*, 64 P.3d 272, 274 (2003) (characterizing the appearance of impropriety standard as arising under the disqualification statute).

We find it unnecessary in this case to decide whether the legislature's claim of exclusive authority "to prescribe the duties of the office of the district attorney" in the context of disqualification conflicts with the judiciary's inherent authority "to protect its dignity, independence, and integrity." *In Interest of J.E.S.*, 817 P.2d at 511.

charges against N.R. Because Watson made this decision after July 2002, the amended version of section 20–1–107 controls the instant appeal.

■ There is a presumption in Colorado law that legislation is to be applied prospectively. § 2–4–202, C.R.S. (2005); *Ficarra v. Dep't of Regulatory Agencies, Div. of Ins.,* 849 P.2d 6, 13 (Colo.1993). We have held that "[l]egislation is applied prospectively when it operates on transactions that occur after its effective date." *Ficarra,* 849 P.2d at 11. The presumption of prospective application is based on the "general consensus that notice or warning of the rules should be given in advance of the actions whose effects are to be judged." 2 Norman J. Singer, *Statutes and Statutory Interpretation,* § 41:2 (6th ed.2001). The transaction "whose effects are to be judged" by N.R.'s motion for disqualification is District Attorney Watson's 2005 decision to bring charges against N.R.[4] Therefore, the amended version of section 20–1–107 controls our analysis.

Having determined that the amended version of section 20–1–107 controls this case, we proceed to apply the statute. Under the statute, disqualification is only proper when 1) the district attorney requests his own disqualification; 2) the district attorney has a personal or financial interest in the prosecution; or 3) special circumstances exist that would render it unlikely that the defendant would receive a fair trial if prosecuted by the district attorney. § 20–1–107(2), C.R.S. (2005). It is clear that the first of these three scenarios is not present: Watson has not requested his own disqualification. Below, we consider whether the other two scenarios are present.

### 2. The District Attorney's Office is not "Interested" in N.R.'s Prosecution Under Section 20–1–107

■ N.R. does not argue that anyone in the District Attorney's Office has a financial interest in his case. Instead, N.R. appears to argue that the fact that Watson's predecessor had declined to bring charges against N.R., along with the fact that Watson received substantial political support from the victim's mother in his campaign to become district attorney, demonstrates that Watson has a personal interest in N.R.'s prosecution. The trial court rejected this argument, and we agree with the trial court's ruling.

In a number of cases under earlier versions of section 20–1–107, we have discussed what sort of "interest" may serve as the basis for disqualification. In *People v. Palomo,* 31 P.3d 879 (Colo.2001), we noted that our inquiry on this issue has "focused on whether the members of the district attorney's office would stand to receive personal benefit or detriment from the outcome of a case." *Id.* at 882; *see also People ex rel. Sandstrom v. Dist. Court,* 884 P.2d 707, 711 (Colo.1994) (" '[T]he interest which requires the removal of a district attorney for the particular occasion ... is such a concern in the outcome of the matter that he will either reap some benefit or suffer some disadvantage.' ") (quoting *Gray v. District Court,* 42 Colo. 298, 304, 94 P. 287, 289 (1908)). We have also held that the disqualification statute "is designed to authorize the disqualification of a district attorney and to allow for the appointment of a special prosecutor only when the district attorney has an interest in the litigation apart from his professional responsibility of upholding the law." *People v. District Court In and For Second Judicial Dist.,* 189 Colo. 159, 162, 538 P.2d 887, 889 (1975) (hereinafter *Second Judicial District*).

■ The above cases stand for the proposition that a district attorney does not have a personal interest in a prosecution that warrants disqualification unless he stands to receive some personal benefit (or suffer some detriment) from the outcome of the prosecution that is unrelated to his duty to enforce the law. The trial court found that "[t]he next election for District Attorney of this District will take place in 2008. Any perceived advantage to Mr. Watson from filing a case at this stage of his tenure is tenuous, at

---

4. Indeed, Mr. Watson was not elected District Attorney until November 2004, some two years after the 2002 version of section 20–1–107 became effective. As the trial court noted, "[i]t

would be anomalous indeed to hold Mr. Watson to the standard extent [sic] prior to July 1, 2002, for conduct of his occurring well after that date."

best." N.R., then, points to no benefit or detriment to Mr. Watson that is dependent on the outcome of N.R.'s prosecution. Moreover, to the extent N.R.'s argument relies on the fact that Watson's predecessor declined to file charges, any analysis of Watson's alleged interest in the case should consider the propriety of Watson's decision to file charges. In light of the fact that a trial judge has found probable cause for the attempted second-degree murder charge, it appears that Watson is simply performing his professional duty to execute the laws of the State of Colorado.

Along with his contentions about Watson's interest, N.R. argues that the entire District Attorney's Office "suffers from a conflict of interest in prosecuting N.R. because of the concessions and judicial admissions the office made during the forced-prosecution case brought by the Funaros." This argument refers to statements made by the District Attorney's Office—when it was under the direction of District Attorney Adams—in response to the section 16–5–209 action brought against the Office by the parents of the victim. N.R. fails to show how the actions of the District Attorney's Office under the prior leadership of District Attorney Adams would make it more likely that any member of the District Attorney's Office would receive a "benefit or detriment from the outcome of the case" against him. *Palomo*, 31 P.3d at 882. Therefore, he has not demonstrated that the District Attorney's Office is interested in the prosecution under section 20–1–107.

### 3. N.R. Will Not Receive an Unfair Trial if he is Prosecuted by the Thirteenth Judicial District

█ The final scenario in which disqualification is proper under section 20–1–107 is when the trial court finds that "special circumstances exist that would render it unlikely that the defendant would receive a fair trial." The trial court does not appear to have expressly considered this basis for disqualification. However, for the reasons discussed below, we conclude that disqualification would not be appropriate under the "special circumstances" provision of section 20–1–107.

We have not previously construed the "special circumstances" provision of section 20–1–107, which was added in the 2002 amendment to the statute. However, in several cases brought under earlier versions of the statute, we have discussed what type of circumstances would render a prosecution so unfair as to require removal of the prosecutor. *See Wheeler v. District Court*, 180 Colo. 275, 278–79, 504 P.2d 1094, 1096 (1973) ("When one seeks to disqualify a prosecuting attorney ... it is incumbent upon him to establish facts from which the trial court may reasonably conclude that the accused will probably not receive a fair trial to which he is entitled."); *see also People v. C.V.*, 64 P.3d 272, 275–76 (2003) ("It is incumbent upon the defendant to present sufficient evidence to support a conclusion that he or she will be denied a fair trial if the prosecuting attorney is allowed to proceed with the prosecution."); *Second Judicial District*, 189 Colo. 159, 162, 538 P.2d 887, 889 (considering whether "the defendant would not receive a fair trial if the district attorney or any member of his staff was the prosecutor").

Second Judicial District is a useful precedent for determining whether circumstances exist "that would render it unlikely that [N.R.] would receive a fair trial." § 20–1–107(2). In Second Judicial District, the trial court disqualified a district attorney who was running for mayor while he was prosecuting the defendant. The trial court based disqualification on the fact that the district attorney's mayoral campaign committee had purchased an advertisement in the Denver Post that applauded his "willingness bordering on zeal to seek out controversial issues" and his prosecution of the defendant for the defendant's "shaky financial deals." 189 Colo. at 161, 538 P.2d at 888. After noting that a petition to disqualify a district attorney must "establish facts from which the trial court may reasonably conclude that the accused will probably not receive a fair trial," this court reversed the disqualification, concluding that "it would be beyond belief that anyone could state on the basis of [the advertisement] that [the defendant] would be

subjected to an unfair trial because of this district attorney's past, current, or future participation in the case." *Id.* at 162–63, 538 P.2d at 889.

We conclude that the rule of *Second Judicial District* controls the instant case. N.R.'s contention that Watson is politically indebted to the Funaro family is very similar to the argument in *Second Judicial District* that the district attorney in that case would "reap political gain from his participating in [the defendant's] case, and [would] therefore be placed in a position of over extending in an effort to convict and thus [the defendant] would be unfairly tried." *Id.* at 162, 538 P.2d at 888.

Just as this argument failed in *Second Judicial District,* we conclude that it fails here. First, as discussed above, given the trial court's finding that probable cause supports the attempted second-degree murder charge against N.R., there is a strong basis for the conclusion that Watson's sole motive in prosecuting N.R. is to enforce the law. Further, even if Watson owes his election to the Office of District Attorney in part to the efforts of the Funaro family, this fact will be no more likely to cause him to "over extend" in performing his prosecutorial function than would the political advertisement in *Second Judicial District* cause the district attorney in that case to "over extend." *Id.* at 162, 538 P.2d at 888.

N.R., then, points to no circumstances in the instant case that render it unlikely that he would receive a fair trial if prosecuted by the Thirteenth Judicial District Attorney's Office, and disqualification would therefore be improper under the "special circumstances" provision of section 20–1–107. The disqualification order therefore must be reversed.

### III. Conclusion

To summarize, we conclude that the amended version of section 20–1–107 eliminates "appearance of impropriety" as a basis for disqualification. Because none of the bases for disqualification listed in section 20–1–107 is present in the instant case, the trial court abused its discretion in disqualifying the district attorney. We therefore reverse

the disqualification order and remand for proceedings not inconsistent with this opinion.

Justice BENDER concurs in part and dissents in part, Chief Justice MULLARKEY and Justice MARTINEZ join in the concurrence and dissent.

Justice BENDER, concurring in part and dissenting in part.

I concur with the majority's application of the first two statutory circumstances authorizing district attorney disqualification because the district attorney did not move to disqualify himself and because the district attorney did not have a personal or financial conflict of interest. However, I disagree with the majority's holding that the trial court abused its discretion because "appearance of impropriety" is not one of the bases for disqualification in the disqualification statute and because none of the bases for disqualification in the disqualification statute occurred here. This holding effectively treats the disqualification statute as articulating the sole means by which a trial court may disqualify a district attorney and eliminates the traditional inherent power of the court to act in this area absent legislative authorization.

Trial courts, since the beginning of our Colorado and federal jurisprudence, have always possessed the inherent authority to protect the integrity of the judicial process and to ensure that legal proceedings appear fair to all who observe them. This inherent power includes the power to disqualify a district attorney, or any attorney, who violates his duties to the court and to the judicial process. Such duties include the duty to comply with the Rules of Professional Conduct and the rules of the court, as well as the special duties that arise from the district attorney's special position as a minister of justice. Some of these duties do not necessarily implicate or threaten the right of a criminal defendant to receive a fair trial. In my view, courts possess the inherent authority to disqualify a district attorney for violating these duties, even where the violation or the trial court's concern does not implicate

whether an accused will likely receive a fair trial. The statute, section 20–1–107, C.R.S. (2005), by its use of the adverb "only," narrows the traditional and timehonored inherent power of the courts and thus violates the constitutional doctrine of separation of powers. Accordingly, I would hold the statute unconstitutional to the extent it purports to set forth an exhaustive limiting set of circumstances by which a trial court may disqualify the district attorney.

Addressing this case, the trial court disqualified District Attorney Watson because it found that his prosecution of N.R. "would tend to lead average members of the community [to believe] that Mr. Watson was somehow beholden to the victim's family, leading to a political payoff in this case," and that his continued participation would "undermine the credibility of the criminal process."[1] I would hold that the trial court's findings support the conclusion that that court acted within its inherent powers to protect the integrity of the judicial process.

I therefore respectfully dissent.

Because the majority does not reach the question of whether the court may order an "ethical wall" in this case, and because this question is addressed in *People v. Chavez*, 05SA311, I see no reason to address this question in this dissent.

## THE MAJORITY'S REASONING

The district attorney disqualification statute purports to authorize disqualification *only* in the following instances: (1) when the district attorney requests that she be disqualified; (2) if the court determines that the district attorney has a personal or financial interest in the case; or (3) if the court finds that special circumstances exist that would render it unlikely that the defendant would receive a fair trial.[2]

Although the majority concedes that section 20–1–107's claim of exclusive authority over district attorney disqualification "arguably conflicts" with our cases applying the inherent power of the judiciary to protect the dignity, independence, and integrity of the court, and the judicial process, the majority finds it "unnecessary" to address these conflicts. Maj. Op. at 675 n. 3. Instead, by holding that it need only determine whether disqualification was authorized under section 20–1–107, the majority effectively concludes that the disqualification statute does in fact present an exhaustive list of circumstances under which a trial court may disqualify a district attorney. The majority then analyzes the facts in this case according to our precedent concerning fair trial, relying on our holding in *People v. District Court In and For Second Judicial Dist.*, 189 Colo. 159, 538 P.2d 887 (1975) (hereinafter *Second Judicial District*), where we reversed the trial court's disqualification of a district attorney whose mayoral campaign highlighted his zeal to prosecute the defendant in that case. Maj. Op. at 676–78. The majority holds that N.R., like the defendant in *Second Judicial District*, did not establish that his trial would be unfair because the district attorney would reap a political gain from prosecuting him. *Id.* at 678. Thus, the majority concludes that, because the three circumstances in the disqualification statute are not present,[3] the trial court abused its discretion when it disqualified the district attorney. *Id.*

---

1. The trial court disqualified both District Attorney Robert Watson and Assistant District Attorney Stephen Jones. For simplicity, I refer to the disqualification of "the district attorney."

2. I note that the wording of the district attorney disqualification statute presents serious problems. Section 20–1–107(2) begins with a sentence that appears to be missing a subject:

> A district attorney may only be disqualified in a particular case at the request of the district attorney or upon a showing that the district attorney has a personal or financial interest *or finds* special circumstances that would render it unlikely that the defendant would receive a fair trial.

§ 20–1–107(2), C.R.S. (2005) (emphasis added). This sentence appears grammatically incorrect because the verb "finds" does not appear to correspond to any subject. Put another way, this sentence does not state who must "find[] special circumstances." Although I agree with the majority that we must construe this statute to require the court, not the district attorney, to find special circumstances, the statute is nonetheless confusing at best.

3. I agree with the majority's holding that the first two circumstances were not present because the district attorney did not move to disqualify himself, and he did not have a personal or financial interest in the case.

In my view, the statute's claim to set forth such an exhaustive list infringes upon the inherent power of the court to protect the integrity of the judicial process, to which I now turn.[4]

### INHERENT POWERS OF THE JUDICIARY AND THE SEPARATION OF POWERS DOCTRINE

Trial courts have always possessed the inherent authority to protect the integrity of the judicial process and to ensure that legal proceedings appear fair to all who observe them:

> [inherent powers of the judiciary include] [a]ll powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective. These powers are inherent in the sense that they exist because the court exists; the court is, therefore it has the powers reasonably required to act as an efficient court."

*Pena v. District Court*, 681 P.2d 953, 956 (Colo.1984) (citation omitted) (underlined emphasis added); *see also In Interest of J.E.S.*, 817 P.2d 508, 511 (Colo.1991) (citing *Pena* for the proposition that a court has the inherent power to protect its dignity, independence, and integrity); *see also* C.J.C. 2(A) (stating that a judge must conduct himself at all times in manner that promotes public confidence in the integrity and impartiality of the judiciary). Courts' inherent powers derive from the principle, fundamental to our republican constitutional system of government, which mandates that the judiciary is a separate, coequal branch of government:

> courts possess inherent power, that is, authority not expressly provided for in the constitution but which is *derived from the creation of a separate branch of government* and which may be exercised by the branch to protect itself in the performance of its constitutional duties.

*Board of County Comm'rs v. Nineteenth Judicial Dist.*, 895 P.2d 545, 548 (Colo.1995) (citing *In re Salary of Juvenile Director*, 87 Wash.2d 232, 245, 552 P.2d 163, 171 (1976) (emphasis added)). We have defined the inherent powers of the judiciary to be the powers that logically flow from the existence of the judiciary as the third co-equal branch of government. *Pena*, 681 P.2d at 956. A court may invoke its inherent power to do what is reasonably necessary for the orderly and efficient exercise of the administration of justice—that is, to protect itself in the performance of its constitutional duties. *See Board of County Comm'rs*, 895 P.2d at 549. Under the Colorado Code of Judicial Conduct, a judge bears a duty to "uphold the integrity and independence of the judiciary." C.J.C. 1 (2005).[5]

4. I also disagree with the majority's application of the third category of circumstances, where "special circumstances exist that would render it unlikely that the defendant would receive a fair trial." First, I do not believe that *Second Judicial District* is sufficiently analogous to control the present case. In that case, we reasoned that the district attorney's political advertisement did not constitute sufficient facts that could make the court reasonably conclude that the district attorney had an "interest in the litigation apart from his professional responsibility of upholding the law." *Second Judicial District*, 538 P.2d at 889. That case is distinguishable from the present case because here, the trial court specifically found that there was a likelihood that the public would view the prosecution as a "political payoff," and if the district attorney continued to prosecute it would "undermine the credibility of the criminal process." Second, I disagree with the majority's reasoning that because the trial court found probable cause to support the attempted second degree murder charge, a "strong basis [exists]" for the conclusion that [the district attorney's] *sole motive* in prosecuting N.R. [was] to enforce the law." Maj. Op. at 678 (emphasis added). The fact that the trial court found probable cause bears no relation to the authenticity of the district attorney's motives when he charged N.R. In fact, the trial court found that there was a strong chance that the public would view the prosecution of N.R. as a "political payoff."

These issues with the majority's analysis are secondary because I disagree with the majority's broad holding, which it reaches without analysis of the doctrine of separation of powers, that a trial court's discretion to disqualify the district attorney is limited to the circumstances listed in the disqualification statute.

5. Other jurisdictions have recognized the inherent power of courts to protect the dignity, independence and integrity of the court and the judicial process. *See, e.g., Valley v. Phillips County Election Comm.*, 357 Ark. 494, 183 S.W.3d 557, 559 (2004) ("A trial court has the inherent authority to protect the integrity of the court in

The fact that each of the three branches of government enjoys inherent powers is at the heart of the separation of powers doctrine—the constitutional doctrine that prevents one branch of government from exercising powers that constitute the exclusive domain of the other branches:

> The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and *no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others,* except as in this constitution expressly directed or permitted.

Colo. Const. Art. 3 (emphasis added); *See also Crowe v. Tull,* 126 P.3d 196, 205 (Colo. 2006). This court has recognized the importance of the doctrine of separation of powers because this constitutional principle protects the ability of judges to settle disputes by addressing the issues based upon the law and the constitution without fear of retribution if their decisions are unpopular:

> In their responsibilities and duties, the courts must have complete independence.... It is the genius of our government that the *courts must be independent, unfettered, and free from directives, influence, or interference from any extraneous source.* It is abhorrent to the principles of our legal system and to our form of government that courts, being a coordinate department of government, should be compelled to depend upon the vagaries of an extrinsic will. *Such would interfere with the operation of the courts, impinge upon their power and thwart the effective administration of justice.* These principles,

concepts, and doctrines are so thoroughly embedded in our legal system that they have become bone and sinew of our state and national polity.

*Pena,* 681 P.2d at 956 (citing *Smith v. Miller,* 153 Colo. 35, 40–41, 384 P.2d 738, 741 (1963)) (emphasis added). Another purpose of the separation of powers doctrine is to provide a check on the concentration of power in any one branch of government so that no one branch may arbitrarily assume authority that rightly belongs to another branch. *Polhill v. Buckley,* 923 P.2d 119, 128 (Colo.1996).

One such inherent power we have long recognized is the trial court's inherent power to disqualify an attorney to preserve the court's integrity and to assure the fairness of the trial, even when doing so required the trial court to go beyond the applicable disqualification statute. *See In re Estate of Myers,* 130 P.3d 1023, 1025 (Colo.2006); *see also People v. Witty,* 36 P.3d 69, 73 (Colo. App.2000) (holding that the trial court did not violate the doctrine of separation of powers when it disqualified a district attorney to avoid the appearance of impropriety even though this basis for disqualification was not specifically codified in the former disqualification statute); *Roberts v. People,* 11 Colo. 213, 215, 17 P. 637 (1888) (concluding that "we are not prepared to say that a ... court may not [appoint a special prosecutor] for good and sufficient reasons other than those specified in the statute").[6]

In *People v. Palomo,* we recognized that, in addition to the bases set out in a previous version of the disqualification statute, "[a]n 'appearance of impropriety' can also be the basis for disqualification." 31 P.3d 879, 882 (Colo.2001). In *People v. Garcia,* we looked beyond the former disqualification statute

---

actions before it."); *Virmani v. Presbyterian Health Services Corp.,* 350 N.C. 449, 463, 515 S.E.2d 675, 685 (N.C.1999) ("[T]rial courts always retain the necessary inherent power granted them by [the state constitution] to control their proceedings and records in order in ensure that each side has a fair and impartial trial"); *S.Y. v. McMillan,* 563 So.2d 807, 809 (Fla.App. 1990) ("A court has the inherent power to control the conduct of its own proceedings in order to preserve order and decorum in the courtroom, to protect the rights of parties and witnesses, and to generally further the administration of justice."); *Beit v. Probate and Family Court Dept.,*

385 Mass. 854, 859, 434 N.E.2d 642, 646 (Mass. 1982) ("Judges have the inherent power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his life, liberty, property or character is at stake." (internal citation omitted)).

6. *Footnote 3 of the majority opinion contains further citations to Colorado cases that recognize grounds for district attorney disqualification in addition to those in former section 20–1–107.*

and held that a trial court should consider "whether disqualification appears reasonably necessary to insure the integrity of the fact-finding process, the fairness or appearance of fairness of trial, the orderly or efficient administration of justice, or public trust or confidence in the criminal justice system." 698 P.2d 801, 806 (Colo.1985) (internal citation omitted). We have recently recognized the inherent power of the court to protect the integrity and fairness of a trial in a case involving attorney disqualification:

> courts have the inherent power to ensure both the reality and appearance of integrity and fairness in proceedings before them; and to that end, they necessarily retain the discretion to disqualify attorneys from further representation.

*Myers,* 130 P.3d at 1025 (citations omitted).

Courts in other jurisdictions have recognized that a trial court's inherent authority to supervise the professional conduct of attorneys appearing before it includes the power to disqualify an attorney. *E.g. Richardson v. Hamilton Int'l Corp.,* 469 F.2d 1382, 1385–86 (3d Cir.1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). The United States Supreme Court has recognized the inherent authority of the court to protect its integrity and the fairness of the proceedings before it by disqualifying a criminal defense attorney due to conflict of interest, even where his clients waived the conflict:

> Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.

*Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). In *Wheat,* the Court held that the "institutional interest in the rendition of just verdicts in criminal cases" trumped the Sixth Amend-

ment assumption that a criminal defendant has the right to counsel of his choice. *Id.*[7]

It is true that we have at times employed the language "appearance of impropriety" to refer to a court's inherent power to disqualify district attorneys. *See Garcia,* 698 P.2d at 806 (holding that a trial court may disqualify the district attorney to avoid the appearance of impropriety). The phrase "appearance of impropriety" establishes a nebulous standard, that broadly describes the court's inherent power. *See Palomo,* 31 P.3d at 884. This phrase may have been an adequate description under the former disqualification statute because that statute did not attempt to limit the circumstances under which a trial court has the authority to disqualify a district attorney. *See* § 20–1–107, C.R.S. (2001). But when the General Assembly adopted the current statute, it clearly intended to restrict the power of trial courts. *See id.* As a result, trial courts must remain within their constitutional authority when they disqualify a district attorney for reasons other than those specified in section 20–1–107. A trial court's constitutional authority to disqualify a district attorney is limited to circumstances where disqualification is necessary to protect and preserve the reality and the appearance of the dignity, independence, and integrity of the court, which includes preserving both the reality of and the appearance of the fairness of the proceeding before it.

In the present case, if section 20–1–107's claim of exclusive authority over district attorney disqualification usurps inherent powers of the judiciary, then it violates the doctrine of separation of powers and is unconstitutional. To determine whether this is so, I compare the circumstances under which a trial court may disqualify a district attorney pursuant to its inherent power to protect the integrity of the judiciary and its processes to the circumstances under which

7. Other jurisdictions have recognized a trial court's authority to disqualify an attorney pursuant to its inherent powers. *See e.g., People v. Jones,* 33 Cal.4th 234, 14 Cal.Rptr.3d 579, 91 P.3d 939, 943 (2004) ("A trial court's authority to disqualify an attorney derives from the power inherent in every court 'to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connect-

ed with a judicial proceeding before it, in every matter pertaining thereto.' " (citation omitted)); *Norman v. Norman,* 333 Ark. 644, 970 S.W.2d 270, 273 (1998) ("[C]ourts have the power, as well as the duty and responsibility, to disqualify counsel ... where he is guilty of conduct which is unprofessional or otherwise improper." (*citing* 7 C.J.S. *Attorney & Client* § 58 (1980))).

the disqualification statute authorizes disqualification.

## THE DISQUALIFICATION STATUTE AND THE DUTIES AND THE ROLE OF THE DISTRICT ATTORNEY

As discussed earlier, the district attorney disqualification statute presents three circumstances under which a trial court may disqualify a district attorney. The word "only" in the statute represents an unequivocal statement that this list is meant to be exhaustive. § 20–1–107(a), C.R.S. (2005). But these three circumstances do not account for a district attorney's unique duties and obligations, as both an officer of the court and an officer of the executive branch, that may serve as bases for disqualification pursuant to a trial court's inherent power to protect the integrity of the court and the proceeding before it.

District attorneys are bound by special duties and responsibilities that affect the integrity of the court and the judicial process. A district attorney has the dual roles of executive officer of the state, and, like every other attorney, officer of the court. *People v. District Court,* 186 Colo. 335, 338, 527 P.2d 50, 52 (1974). Hence, although a district attorney is an elected constitutional officer whose duties are prescribed by the General Assembly, she is also bound by the Rules of Professional Conduct and the rules of the court.

A district attorney is further bound by standards of conduct unique to public prosecutors: her duty is to seek justice, not merely to convict. "Although the prosecutor operates within the adversary system, it is fundamental that the prosecutor's obligation is to protect the innocent as well as to convict the guilty." ABA Standards for Prosecution and Defense, Commentary to Standard 3–1.2 (1993). The prosecutor has been described as a " 'minister of justice' or as

occupying a quasi-judicial position." *Id.* Because of this unique position, coupled with the fact that a prosecutor is primarily responsible for deciding whether to bring charges and for determining which cases are taken into the courts, the prosecutor's choices impact the integrity of the judiciary itself:

> the character, quality and efficiency of the whole system is shaped in great measure by the manner in which the prosecutor exercises his or her broad discretionary powers.

*Id.*

The United States Supreme Court has recognized the unique position held by prosecutors who act both as advocates of the government and as servants of the law itself:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape nor innocence suffer.

*Berger v. U.S.,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Because the duties and responsibilities of district attorneys reflect on the integrity of the court, a district attorney's violation of these rules can support a trial court's decision to disqualify a district attorney pursuant to the court's inherent power.[8] *See Douglas v. U.S.,* 488 A.2d 121, 138 n. 18 (D.C.Ct.App., 1985) ("[T]he Code of Professional Responsibility will be relevant to a trial court's determination of whether an attorney should be disqualified in criminal, as well as civil, cases."). A trial court may disqualify a district attorney even when the

---

8. We recently held that "violation of an ethical rule, in itself, is neither a necessary nor a sufficient condition for disqualification." *Myers,* 130 P.3d at 1025. Such a violation supports disqualification only if it results in unfairness to a party or harms the integrity of the judiciary:

 > [a] trial court's inherent power to disqualify counsel may be exercised only when necessary

 to avoid unfairness to a party or to protect the integrity of the proceedings."

 *Id.* at 1026. *Myers* supports and informs the rationale that a violation of ethical duties and the special duties of the prosecutor can serve to disqualify when these violations impair the integrity of the judiciary and when these violations do not impair the fairness of an accused's trial.

fairness of the trial is not contested because, although overlap may often exist, the goal of preserving the integrity of the judicial process and the goal of ensuring the fairness of a particular trial will not always coincide. Instances where a court may disqualify a district attorney even where a fair trial is likely to occur include those where a district attorney violates the Rules of Professional Conduct by appearing incompetent, intoxicated, or otherwise disrespecting the authority and dignity of the court. *See* Colo. RPC, Preamble ("In all professional functions a lawyer should be competent, prompt and diligent."); Colo. RPC, Preamble ("A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials."). Although these instances may not necessarily "render it unlikely that the defendant would receive a fair trial," they would provide grounds for disqualification pursuant to the court's inherent authority to preserve the integrity of the judicial process.

An example where a trial court may disqualify a district attorney and yet the fairness of the trial is not impaired involves a waived conflict of interest. Colo. RPC 1.9(a). If a district attorney prosecutes a former client on a matter related to her earlier representation and the client waives the conflict, the trial court may nonetheless disqualify the prosecutor to protect the appearance of the integrity of the court's process (its constitutional role), despite the fact that the trial itself may not be rendered unfair by the conflict. Such was the case involving a defense lawyer in *Wheat*. There, the Court upheld the disqualification of a defense attorney, even though each of the three affected clients, including Wheat, had waived their respective conflicts of interest, and consented to the representation of the attorney disqualified by the trial court. *Wheat,* 486 U.S. at 153, 108 S.Ct. 1692. Even though the fairness of the trial itself was not an issue, the Court reasoned that disqualification was justified to uphold the integrity of the judicial system. This rationale, relied upon by the

Court to disqualify a defense lawyer, applies with equal force to a prosecutor.

## DISQUALIFICATION OF THE DISTRICT ATTORNEY IN THE PRESENT CASE

Here, the trial court did not determine that N.R. would not receive a fair trial if the district attorney rather than a special prosecutor prosecuted him. Instead, the trial court disqualified the district attorney due to the appearance of a "political payoff" in the charging of N.R. and found that his continued prosecution would "undermine the credibility of the criminal process." [9] In my view, the district attorney's decision to charge N.R. under this unique set of circumstances threatened the integrity of the court and the judicial process.

I would therefore evaluate this case in light of the inherent powers of the court to protect the integrity of the judiciary. I would hold that the trial court did not abuse its discretion when it disqualified District Attorney Watson and Assistant District Attorney Jones. The trial court relied upon the following facts. The victim's mother adamantly supported Watson during his campaign for District Attorney, arguing that if elected he would "do the 'right thing.' " Within a month of taking office, Watson reopened the case against N.R. Although the previous District Attorney had concluded that "there is not another responsible and competent prosecutor in the State of Colorado who would file criminal charges" against N.R., Watson filed charges less than two months after taking office. The trial court found that the circumstances surrounding Watson's prosecution of N.R. were "sufficient to undermine the credibility of the criminal process":

> The fact that Mr. Watson, who enjoyed substantial political support from the mother of the victim, reversed the rather strongly held position of [his predecessor] relative to the prosecution of this case would tend to lead average members of the community [to believe] that Mr. Watson

---

9. The trial court determined that because Jones had a "significant amount of involvement with the case during [the former district attorney's]

tenure," the same public perception issues would exist if Jones prosecuted the case.

was somehow beholden to the victim's family, leading to a political payoff in this case.

This rationale is not arbitrary, unreasonable or unfair. *People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993). To the contrary, this case presents exactly the circumstances supporting disqualification pursuant to the court's inherent powers because it presents facts which lie outside the narrow limits to the trial court's authority as defined by the disqualification statute. Reasonably anticipated public skepticism concerning Watson's motives for prosecuting N.R. will harm the integrity of the court, undermine the judicial process, and denigrate the constitutional role of the court. Thus, I would affirm the trial court's ruling.

I am authorized to state that Chief Justice MULLARKEY and Justice MARTINEZ join in this concurrence and dissent.

The **PEOPLE** of the State of Colorado, Petitioner–Appellant,